Walser v. Wear.

---

WALSER, *Plaintiff in Error*, v. WEAR.

Division Two, November 23, 1897.

1. **Pleading:** MOTION TO STRIKE OUT: REPLY: WAIVER. Where plaintiff moved to strike out parts of the answer, which, being overruled, he replied to the same parts thereof, the legal effect of the reply is to waive his right to have reviewed the action of the trial court in overruling his motion to strike out.

2. **Res Adjudicata:** DEMURRER: GUARANTOR. This suit was against defendant as a guarantor of a contract with G. In a former suit by the same plaintiff for a breach of the contract, G. and the defendant were joined as defendants, G. as principal and this defendant as

guarantor. This defendant demurred because there was a misjoinder of defendants and a misjoinder of causes of action, which demurrer was sustained. In this cause the defendant filed answer stating that he was the real party in interest in the contract. *Held*, that there was no estoppel in the ruling upon the demurrer, and that the guarantor was not estopped to plead that he was the real party in interest, the demurrer only going to the sufficiency of the petition.

3. **Practice**: EVIDENCE: STRIKING OUT: CURE. Whatever error is committed in admitting improper statements as evidence is cured by the action of the court in subsequently striking them out.

4. **Evidence**: STATEMENTS AS TO WHAT BOOKS SHOW: WAIVER. The guarantor of the contract of the lessee of a coal mine testified as to the receipts from sales of coal and expenditures in operating the mine, etc., from an examination of account books kept by the lessee, of which the guarantor had no personal supervision. The testimony was objected to as being entirely incompetent. *Held*, that while the books themselves would have been the best evidence, yet as the objection was not made that the guarantor's testimony was secondary evidence, and as the books were shown to have been correctly kept, the objection was properly overruled, the guarantor's testimony being clearly competent as secondary evidence, and opposing counsel having neglected to object to it as such.

5. **Pleadings as Evidence**: AFTERTHOUGHT. Defendant's third answer charged that the contract on which the suit is based was obtained by fraud. This charge did not appear in his first and second answers, which were offered in evidence by plaintiff to show that the defense of fraud was an afterthought. *Held* to be admissible.

6. **Defenses of Guarantor**. A guarantor of a contract has the right to avail himself of any defense that his principal in the contract had, even to show that the contract was obtained by fraud and fraudulent representations.

7. **Fraud**: FINDING OF JURY. Where a separate issue as to whether or not a contract was obtained through fraud has been submitted to a jury, and its finding has received the sanction of the trial court, this court will not interfere so long as there was any substantial evidence to support the finding.

8. **Counterclaim**: SUBROGATION OF GUARANTOR. A guarantor of another's contract can not be subrogated to the rights of that other by counterclaim to an action brought by the other party to the contract against the guarantor or otherwise. He has the right to avail himself of the defense of fraud practiced upon his principal in obtaining the contract, but he can not, in a suit against him by the other party to the contract, go further and set up a counterclaim against that other party for losses sustained by his principal in trying to perform the contract.

*Error to Barton Circuit Court.*—Hon. D. P. Stratton, Judge.

REVERSED AND REMANDED.

*Thurman & Wray* and *G. H. Walser* for plaintiff in error.

(1) The motion to strike out that portion of defendant's answer changing his liability as a guarantor, as fixed by the written agreement, to a principal, on the ground that such was the understanding at the time the guaranty was executed, should have been sustained. 1 Greenl. Ev., sec. 277; *James v. Clough*, 25 Mo. App. 154; *Koehring v. Muemminghoff*, 61 Mo. 407; *Fruin v. Railroad*, 89 Mo. 404; *State ex rel. v. Hoshaw*, 98 Mo. 360. (2) Besides, defendant is estopped from asserting that he was a principal in the lease. Having been so charged in the original petition, at his own instance he was discharged on demurrer from answering in any other capacity than as a guarantor. 1 Her. Estop., sec. 51, p. 44; sec. 273, p. 321; sec. 472, p. 569, 570; 2 Her. Estop., sec. 817, 818; *Austin v. Loring*, 63 Mo. 23; *Garton v. Botts*, 73 Mo. 276; 1 Greenl. Ev. [14 Ed.], secs. 27 and 207; *Con. Mutual Life Ins. Co. v. Smith*, 117 Mo. 279. (3) The right of subrogation is purely equitable, and the trial would have been to a chancellor instead of a jury. (4) The abandoned pleadings of defendant, offered in evidence by plaintiff, were admissible in evidence as tending to show that all this defense about fraud was an afterthought. *Dowzelot v. Rawling*, 58 Mo. 77; *Anderson v. McPike*, 78 Mo. 319; *Schad v. Sharp*, 95 Mo. 573. (5) The court should have sustained a demurrer to the evidence on the trial of the fourth defense and first counterclaim. There was no evidence to sustain either,

assuming defendant's theory is correct, that he could ignore the written agreement and answer as the real party in interest. 1 Story, sec. 202; *Bryan v. Hitchcock*, 43 Mo. 527; *Clark v. Edgar*, 12 Mo. App. 352; *Dunn v. White*, 63 Mo. 181; *Langdon v. Green*, 49 Mo. 363; *Key v. Jennings*, 66 Mo. 369; *Hitchcock v. Baughan*, 36 Mo. App. 221; *Warren v. Ritchie*, 128 Mo. 311; *Shelby Co. v. Bragg*, 135 Mo. 291. (6) The defendant, after having enjoyed the fruits of the lease for over nine months by operating the mine during the profitable coal season, with full knowledge of the "thickness of the vein and the quality of the coal," can not abandon the contract on the ground of false representations as to such "thickness of the vein and quality of the coal." Such conduct on his part creates the presumption in law that he elected to stand by the contract and is now estopped from denying its validity. Chitty on Cont., 408, 409, 680; *Estes v. Reynolds*, 75 Mo. 565; *Mason v. Bovet*, 1 Denio, 74; *Butts v. Phelps*, 90 Mo. 670; *Am. Ins. Co. v. Kuhlman*, 6 Mo. App. 525; *Reel v. Ewing*, 71 Mo. 29; *Burgess v. Railroad*, 99 Mo. 508; *Kent v. Quicksilver Mining Co.*, 79 N. Y. 184; Her. Estop., sec. 1063, p. 1195; *Hart v. Handlin*, 43 Mo. 171; *Jarrett v. Morton*, 44 Mo. 275; *Carson v. Smith*, 133 Mo. 612. (7) The action of the court in striking out the last three clauses in plaintiff's reply to defendant's second counterclaim can not be sustained on any theory of law or right. By this ruling of the court appellant was denied even his royalty while the lessee was enjoying the profits of his mine—was required to pay for tools of lessee under a stipulation in this lease, when he was denied the right to recover pay for his tools used and destroyed by the lessee, under a like provision in this same lease. *Estes v. Reynolds*, 75 Mo. 565; Her. Estop., sec. 1063; *Mortland v. Holton*, 44 Mo. 62. (8) On the trial the court ought to have

sustained the objection of defendant to the introduction of any evidence on the second counterclaim, for the reason that he seeks to recover on the lease which he claims is void and not binding on him. He can not deny the obligations of the lease and at the same time reap benefits under it. *Estes v. Reynolds*, 75 Mo. 565; *Jarrett v. Morton*, 44 Mo. 275; *Hart v. Handlin*, 43 Mo. 171.

*H. C. Timmonds* and *J. B. Larimer* for defendant in error.

(1) Defendant's liabilities and rights are not fixed as those of a guarantor, and he can now claim to be a principal in the contract sued on. The general rule cited by counsel does not apply to collateral verbal or written agreements, connected with simple contracts. *Ferris v. Thaw*, 72 Mo. 446; *Lumber Co. v. Warner*, 93 Mo. 374; *Nichols & Co. v. Kern*, 32 Mo. App. 1; *Oriental v. Overend*, 7 Ch. App. Cases, 142; 1 Parsons on Con., side pages 55, 62, 63 and 64, and notes; *Liebke v. Methudy*, 14 Mo. App. 71; *Bank v. Pecks*, 28 Vt. 200. (2) The authorities now agree that even as to commercial paper, parol evidence is admissible for the purpose of showing that one of the makers was principal and the other surety, and that such fact was known to the creditor. *Garrett v. Ferguson*, 9 Mo. 125; *Bank v. Wright*, 53 Mo. 153; *Carpenter v. Smith*, 9 Met. 511; *Harris v. Brooks*, 21 Pick. 195; *Ward v. Stout*, 32 Ill. 399. (3) Plaintiff and defendant, in their dealings with each other, all the way through, gave this practical construction to the contract, and the court will not now permit either of them to claim otherwise. *Ferris v. Thaw*, 72 Mo. 446; *Bank v. Pecks*, 28 Vt. 200; Brandt on Suretyship and Guaranty, sec. 80; *Lyles v. Lesher*, 7 West. Rep. (Ind.) 51; *Railroad v. Johnson*, 6 H. L.

C. 798. (4) The defendant pleaded and the jury found that the contract sued on was procured by fraud. Brandt on Suretyship and Guaranty, sec. 352. (5) The plaintiff himself having voluntarily testified that defendant, and not Gwin, was the real contracting party, known to him and relied on by him as such at the time and dealt with continuously in that capacity, can not now be heard to say that such are not the facts, nor escape the consequences of his own acts. *Railroad v. Johnson*, 6 H. L. C. 798; 3 Am. and Eng. Ency. of Law, 893, note 1; *Bassett v. Glover*, 31 Mo. App. 150. (6) There is no merit in the claim that defendant was estopped to plead that he was the real party in interest and the principal, by reason of the fact that he demurred to the first petition filed by plaintiff joining him with Gwin in the same count. The court merely held that the petition on its face was bad. (7) Defendant's books were shown to be correctly kept. They would have been admissible in evidence. *Robinson v. Smith*, 111 Mo. 207; *Fulkerson v. Long*, 63 Mo. App. 268. Plaintiff did not object to the oral testimony of the witness on the ground that it was secondary or not the best evidence, but on the ground that "the book and entries therein are incompetent." (8) A judgment will not be reversed because of the admission of improper evidence, where the facts sought to be proved thereby are satisfactorily established by other competent testimony. *Lane v. Lane*, 113 Mo. 504; *Seligman v. Rogers*, 113 Mo. 642. (9) Plaintiff's tenth and last complaint is that defendant was allowed on the second trial for the tools he placed in the mine under this fraudulent contract, and which were appropriated and converted by plaintiff as alleged in defendant's second counterclaim. This is pleading his own wrong to justify him in holding the property of which he obtained possession under his contract with the man he

has defrauded, and such a plea will not be sanctioned. 2 Parsons on Contracts, side page 782; 1 Addison on Torts, 498, 499; *Gray v. Robjohn*, 4 Bos. (N. Y.) 618. (10) The jury found that the fraudulent representations were made; that defendant relied upon them. These findings were approved by the trial court, and are now conclusive as to all the facts involved. *Brownell v. Barnard*, 116 Mo. 673; *Reichenback v. Mason's Ass'n*, 112 Mo. 22; *Sparks v. Transfer Co.*, 104 Mo. 548.

BURGESS, J.—This is an action against defendant as guarantor for the performance on the part of one J. F. Gwin of a contract of lease entered into between plaintiff and said Gwin for a certain coal mine in Barton county.

The petition alleges: "That he, said Gwin, has failed to work the mine in good order on the rules of first class mining, as he agreed to do in said lease, in this, that he has failed to run mine entries, but stopped them entirely; that he ran entries in the wrong direction, to wit, northeast, when they should have been run, on the rules of good mining, east and north, and some of them in a southern direction. That the mine was not properly drained. Said Gwin failed to work out the coal to the extreme north as far as workable, but left a large amount of coal in the north end of the mine, which in consequence has been entirely lost to plaintiff. He did not take out the coal on a uniform face, carrying the north and south extremes on a line (and the terms of the lease were not varied by written consent of the plaintiff), but on the contrary said Gwin did not extend the work in the mine to the south extremes at all, leaving a large amount of coal in the south part of the coal field untouched and entirely cut off from approach from the works as now opened, in consequence of improperly running the entry, and in

VOL. 141 mo—29

consequence of the falling of the top caused by the unskillful way the coal was taken out, and improper room work in the wrong direction. Plaintiff states that said Gwin, wholly disregarding the terms of said lease, on the —— day of April, 1890, wholly and absolutely abandoned said mine and withdrew all the men therefrom, and then and there threw the same back on the hands of this plaintiff against his will and protest, and has not again resumed the operation of the mine. Plaintiff states that said Gwin did not return the tools, fixtures, property, nor the mine in order. On the contrary, the mine, when abandoned, was left in such a manner that no miner could work in it until new entries were driven and new rooms were opened. The mine, when leased to the defendant, was capable of accommodating thirty miners. That said Gwin and defendant left the mine in such bad condition that to place the same in good order has subjected plaintiff to great loss and expense both in money and in time and will subject him to heavy losses in consequence thereof. Plaintiff states that said Gwin did not produce one thousand cars of lump coal per year, but on the contrary he did not produce more than one hundred and twenty-five cars of lump coal, leaving one thousand, eight hundred and seventy-five cars of coal in deficit on said contract. Plaintiff states that he turned over a large amount of trail iron, a good set of screens, a lot of dirt picks, iron, shovels, tracking props and ties which were in a great measure destroyed or used by said Gwin and not returned to plaintiff under said contract. Plaintiff states that said Gwin did not pay the royalty on the lump coal taken out of said mine, but there remains due and owing to plaintiff royalty on lump coal taken out to the amount of one hundred and fifty dollars. By means and in consequence of the failures of said Gwin to carry out the terms of said

lease as aforesaid, and in consequence of the entire abandonment of said mine as aforesaid, plaintiff has been damaged in the sum of five thousand dollars, for which plaintiff asks judgment."

Defendant in his answer states:

"*First.* For answer to plaintiff's last amended petition, filed at this term of this court, defendant denies each and every allegation therein contained.

"*Second.* And further answering, defendant admits that plaintiff and J. F. Gwin signed the written contract set out in said amended petition and that this plaintiff signed and delivered the other instrument of writing mentioned in said amended petition, guaranteeing the performance by said Gwin of the contract entered into between him and plaintiff aforesaid; but defendant says that he, and not said Gwin, was the real party in interest in said mining lease, as was well known and understood by the plaintiff at the time of the execution thereof.

"*Third.* And further answering, defendant says that said mining lease was by him and said Gwin faithfully carried out and performed in every particular on their part until the —— day of April, 1890, when they turned the said mine back to plaintiff and he voluntarily received the same, and immediately leased it to other parties on more favorable terms to him than it had been leased to this defendant, and plaintiff has in no respect been injured or damaged by anything done or omitted to be done by said Gwin or by this defendant.

"*Fourth.* And further answering said amended petition, the defendant says that at the time of the execution of the mining contract and guaranty mentioned in said amended petition, neither he nor said Gwin was acquainted with the condition or capacity of said mine, nor with the quantity or quality of coal therein, nor

with the quantity or quality of coal that might be mined therefrom, but were wholly ignorant thereof. That plaintiff was, and for a long time prior thereto had been, acquainted with the condition and capacity of said mine, also with the quantity and quality of the coal therein, also with the quantity and quality of coal which might be mined therefrom. That plaintiff, in order to induce defendant to enter into the contract sued on, represented to defendant and to said Gwin that there was an abundance of good marketable coal in said mine, sufficient in quantity and quality to enable them, under the rules of good mining, and under the terms of said lease, to easily comply with and perform every part of said contract; that they could easily produce from said mine at least one thousand cars of marketable lump coal annually; that the vein of marketable coal in said mine was from two feet and a half to two feet, eight inches in thickness; that said mine was free from faults, 'horse-backs,' and other obstacles to mining, and that said mine was in good workable condition, and that the coal in said mine was of such quality that when mined it would screen out four fifths good marketable lump coal. Defendant says that neither of said representations was true, but each and every one of them was false and fraudulent. That defendant relied upon said representations so made as aforesaid by the plaintiff, and believed them to be true; and so relying and believing, entered into the contract sued on and in good faith entered upon the performance thereof. That he took charge of said mine, mined the same in the manner required by said lease, and according to the rules of good mining prosecuted the work vigorously and continuously from the date of said lease until the —— day of April, 1890, when the same was delivered to plaintiff and by him received and leased again to other parties as aforesaid. That during the operation

of said mine by defendant the terms and requirements of said lease were in no particular varied from except by the consent and personal supervision of plaintiff. That defendant prosecuted the work of mining for coal in said mine vigorously and continuously as aforesaid, in a faithful endeavor to comply with all the terms of said contract, until he became convinced that the representations so made to him as aforesaid by plaintiff were not true, when he delivered the said mine over to the plaintiff and the same was by him accepted as aforesaid. Defendant further says that he laid out and expended large sums of money in a faithful endeavor to produce from said mine one thousand carloads of lump coal annually, and in a faithful effort to discover and develop coal in said mine, until he had actually expended eight hundred and fifty dollars thereon; that it was an utter impossibility for defendant or any other person to produce from said mine one thousand cars of lump coal annually; and as soon as that fact became known to defendant, he delivered the mine back to plaintiff who took possession thereof as aforesaid. Defendant further says that if he had known the condition and capacity of said mine, and the quantity and quality of the coal therein, he would not have entered into the contract and lease aforesaid; that he was led into the execution thereof by reason of the false and fraudulent representations so made as aforesaid by plaintiff; and the same is not and ought not to be binding upon this defendant. Wherefore he prays to be discharged with his costs.

"And for *counterclaim* defendant says that at the time of the execution of the contracts mentioned in plaintiff's amended petition neither he nor J. F. Gwin was acquainted with the condition or capacity of the mine mentioned, nor with the quantity or quality of the coal mentioned, nor with the quantity or quality

of coal which might be mined therefrom; that plaintiff was well acquaintedwith said mine, and for a long time prior to said contract had been also acquainted with the condition and capacity of said mine, also with the quantity and quality of coal therein and which might be produced therefrom. That in order to induce defendant to enter into the contract sued on, plaintiff represented to him that there was an abundance of good marketable coal in said mine, sufficient in quantity and quality to enable them, under the rules of good mining and under the terms of said lease, to easily comply with and perform every part of said contract; that the defendant could easily produce from said mine at least one thousand cars of marketable lump coal annually; that the vein of marketable coal in said mine was from two feet and a half to two feet and eight inches in thickness; that said mine was free from faults, 'horsebacks,' and other obstacles to mining, and that said mine was in a good workable condition, and that the coal in said mine was of such good quality that, when mined, it would screen out four fifths good marketable lump coal. Defendant says that neither of said representations was true; but that each and every one of them was false and fraudulent, and so known and intended to be by plaintiff at the time. And defendant, relying upon the false and fraudulent representations so made as aforesaid by plaintiff, and believing them to be true, and being deceived thereby, entered into the contract and agreement sued on, and in good faith entered upon the performance thereof on his part; that he took charge of said mine, operated the same in the manner required by said lease, and according to the rules of good mining, prosecuted the work vigorously and continuously from the date of said contract until the —— day of April, 1890. That by reason of the false and fraudulent representations so made by plain-

tiff as aforesaid, defendant prosecuted the work of mining for coal in said mine vigorously and continuously as aforesaid, in a faithful endeavor to comply with each and every part of said lease on his part until he had actually paid out and expended eight hundred and fifty dollars in money over and above the amount produced to him by said mine; that there was not an abundance of coal in said mine, nor a sufficient quantity or quality to enable defendant or any other person, under the rules of good mining and the terms of said lease, to produce more than twenty-four cars of marketable lump coal monthly; that the vein of coal in said mine was not as thick as represented; that said mine was not free from faults nor 'horse-backs' nor other obstacles to mining; that said mine was not in good workable condition as represented by plaintiff, but was in fact in such condition that defendant had to and did expend large sums of money to put the same in a good workable condition; that the coal in said mine was not of such quality that, when mined, it would screen out four fifths good marketable lump coal, as plaintiff represented, but on the contrary it was of such quality that it would only screen out nine twenty-thirds (9-23) marketable lump coal. That instead of there being an abundance of good marketable coal in said mine, as plaintiff represented, there was only sufficient to employ defendant and his mining hands for the space of about nine and a half months. Wherefore defendant says he was damaged in the sum of one thousand dollars, for which sum with interest and costs he prays judgment.''

''And for a *second counterclaim* herein, defendant says that while engaged in operating the mine mentioned in plaintiff's amended petition and under the lease therein mentioned, he placed therein the following described personal property, to wit: Five and a

half tons of new T iron rails, two new diamond screens, ten mine cars, one set of wheels and axles, one water box, twelve hundred feet of 2x4 hard wood tracking, one car tipple and one stove, all aggregating the full value of six hundred and sixty dollars. That when defendant turned said mine back to plaintiff on the —— day of April, 1890, the plaintiff took and kept all of said personal property, and was bound by the terms of said contract mentioned and sued on in his amended petition, to pay to defendant the value thereof at that time; that their value at that time was fully six hundred and sixty dollars; that plaintiff has failed and refused and still fails and refuses to pay defendant the value of said personal property or any part thereof. Wherefore defendant prays judgment for said sum of six hundred and sixty dollars, with interest and costs.

"And for *third counterclaim* herein, defendant says that while engaged in operating the mine mentioned in plaintiff's amended petition, under the lease therein mentioned, he placed therein the following described personal property, to wit: Five and a half tons of new T iron rails, two new diamond screens, ten mine cars, one set of wheels and axles, one water box, twelve hundred feet of 2x4 hard wood tracking, one car tipple and stove, all aggregating the value of six hundred and sixty dollars. That when defendant delivered said mine back to plaintiff on the —— day of April, 1890, and before defendant had time or opportunity to remove said personal property from said mine, the plaintiff wrongfully took the same and every part thereof into his possession and converted the same to his own use; and though often requested to deliver the same to defendant or pay him therefor, has failed and refused and still refuses to do so. Wherefore defendant says he is damaged in the sum of six hundred

and sixty dollars, for which sum with interest and costs he prays judgment."

Plaintiff made reply to defendant's answer as follows:

"Now comes the plaintiff and for reply to defendant's answer herein, and each and every part thereof, denies each and every allegation in said answer contained, and in each and every defense and counterclaim therein contained, except such as are hereinafter specifically admitted.

"Plaintiff admits that he let and leased the premises described in the contract sued on after the breach of the conditions thereof and the abandonment of same by said Gwin, the lease named in said lease, and on the best and most advantageous terms plaintiff could get, and plaintiff stands ready to account to defendant for the net proceeds of said mine, received by him since the abandonment of the same by said Gwin, and the expiration of the term for which the same was let to said Gwin.

"Plaintiff further replying, says that defendant ought not to be permitted to plead that he was a principal in said contract of lease sued on, for plaintiff says that when said defendant was so charged and sought to be made liable in this suit jointly with said Gwin he solemnly declared by his pleading that he was not a principal and that the written instrument of guaranty fixed his liability as guarantor, and he was only liable in such capacity by virtue of his said written guaranty, and thereupon procured a judgment of this court relieving him from any responsibility as principal and from liability joined as a principal with the said Gwin, and fully discharging him by such judgment from any such joint liability with which he was sought to be charged with said Gwin, and that he ought not now to be

heard to deny his said claim contrary to the holding and judgment of said court so made."

There was judgment in favor of defendant for the sum of $273.50. After unsuccessful motions for new trial and in arrest, plaintiff sued out writ of error from this court and brings the case here for review.

The facts are about as follows:

On the twelfth day of June, 1889, and for a long time prior thereto, plaintiff was the owner of a tract of land containing about six hundred and seventy-five acres adjoining the town of Liberal in Barton county, Missouri, which was underlaid with coal. On that day plaintiff and J. F. Gwin entered into the following agreement:

"This agreement witnesseth that we, G. H. Walser, party of the first part, and J. F. Gwin, party of the second part, agrees as follows: G. H. Walser, party of the first part, does hereby lease to J. F. Gwin, party of the second part, his coal mine now opened and operated on the Missouri Pacific spur at Liberal, Missouri, for the term of two years from the first day of July, 1889, at a royalty of twelve and one-half cents per ton for all lump coal produced and sold from the mine. All slack and nut coal free of royalty. All royalty to be paid by the fifteenth of each month for all coal sold during the previous month. This lease includes all coal trucks, tools and fixtures pertaining to the mine. The party of the second part agree to work the mine in good order on the rules of first class mining. He is to prosecute the work to the extreme north as far as workable, taking the coal out on a uniform face as nearly as possible, carrying the north and south extremes on a line. This may be varied by written consent of the party of the first part. It is agreed by party of the first part that all tools, material and mine cars on hand at the expiration of this lease

are to be taken by the party of the first part for what they are worth at that time as far as they are of use to him. Party of the second part is to return the works and leased tools to party of the first part in good order at the expiration of this lease. G. H. Walser is to have the right to inspect the mine to see that this contract is carried out. The party of the second part to throw business to the people of Liberal; and to use proper influence to keep the tenement houses occupied belonging to party of the first part, and to charge and collect the rent on pay-roll for party of the first part. The party of the first part has a right to extend the terms of this lease one year more after the expiration of two years at a royalty of fifteen cents per ton for lump coal provided he gives written notice three months before the expiration of two years. At the end of three years he can extend it two years longer at fifteen cents per ton for lump coal, provided he gives three months' notice. The mine is to be left in good order when turned over to the party of the first part. This lease only embraces the coal strata and the right to get coal on the cars; the party of the first part reserves the use of the surface above the coal except when necessary to use the same for air courses, shafts, tramways, and other conveniences to prosecute the work successfully. The party of the second part is to prosecute the work vigorously and produce not less than one thousand cars of lump coal annually. Any failure to comply with the conditions of this contract will forfeit this lease and be just cause for cancelling the same.

"Liberal, Mo., June 12, 1889.

"G. H. WALSER,
"J. F. GWIN."

At the same time and as part of the same transaction, defendant executed and delivered to plaintiff an

instrument of writing in the following words and figures, to wit:

"LIBERAL, Mo., June 12, 1889.

"I hereby agree to bind myself that all the provisions by and between G. H. Walser of the first part and J. F. Gwin of the second part, concerning the lease of the coal lands of G. H. Walser, on the Missouri Pacific spur at Liberal, entered into on behalf of J. F. Gwin, be faithfully and properly carried out by him. I do this in consideration of one dollar to me in hand paid by said G. H. Walser.

"F. E. WEAR."

For about eight years prior to the execution of said contract plaintiff had been engaged in mining coal from the land described in said contract and was familiar with the mine, and with the quantity and quality of coal it would produce. Defendant resided at Topeka, Kansas, and had no knowledge of the coal mining business. Plaintiff called upon him at his office in Topeka some time before the date of the contract, and proposed to lease him the mine which is the source of this litigation. During the negotiations defendant claims that plaintiff made certain representations to him as to the quantity and quality of the coal in said mine, which he believed to be true, and relying upon them he entered into said contract for the term of two years from the first day of July, 1889, and thereby obligated himself to pay plaintiff a royalty of twelve and one half cents per ton for all lump coal produced and sold from the mine. The evidence, however, showed that the thickness of the vein was measured by one Kirkwood, an expert miner, in the presence of defendant and at his request.

By agreement between plaintiff Gwin and defendant, the contract of lease was signed by Gwin, and defendant then executed the written guaranty hereto-

fore set out.   Shortly after the execution of the contract
defendant took charge of the mine thereunder, and
continued to operate the same until the month of
April, 1890, during which time he paid plaintiff royalty
on the lump coal produced from said mine.   Defendant
operated said mine until he claims the coal therein
became exhausted and spent $700 or $800 in trying to
find more coal, but without success.   This, however,
is controverted by plaintiff.   Being unable to find any
more coal as he claims, defendant in the month of,
April, 1890, abandoned the mine, and within a few
days thereafter plaintiff took possession of it and leased
it to the Liberal Coal Company on more favorable
terms to him than the lease to defendant.

Thereafter, in April, 1890, plaintiff instituted suit
against the defendant and J. F. Gwin jointly, Gwin
being the person who had signed said contract as here-
inbefore stated.   The petition charged Gwin as princi-
pal and Wear as guarantor.   Gwin filed answer; Wear
demurred, because there was a misjoinder of defendants
and a misjoinder of causes of action in the same petition
and same count.   This demurrer was sustained.   There-
upon plaintiff dismissed his suit as to Gwin and filed an
amended petition as against the defendant Wear.   To
this petition Wear filed answer, setting up that he
was the principal party in interest in said contract, and
that the same was well known and understood by the
plaintiff at the time.   These are the pleadings on which
the case was tried at the February term, 1892.   During
that term plaintiff filed a motion, under section 2134 of
the statute, asking the court to submit, separate and
apart from the other issues raised in the pleadings, the
question as to whether or not he had been guilty of
fraud and misrepresentations in procuring the contract
referred to, and if so, what damage, if any, the defend-
ant had sustained by reason thereof.   This motion was

sustained and these two issues were submitted to a jury. The jury found both of said issues in favor of the defendant, and assessed his damages at $128.

The other issues raised by the pleadings were continued until the September term, 1892, of said court, when they were submitted to the court without a jury. These issues presented a claim for damages against plaintiff by reason of the conversion by him of certain personal property belonging to defendant; and these issues were also by the court found in favor of the defendant, and his damages assessed thereon at the sum of $273.

It appears from the record that before plaintiff filed his replication to defendant's answer to his last amended petition, that plaintiff filed his motion to strike out that part of the answer which sought to change defendant's liability as guarantor to that of principal, as well also as the first, second and third counterclaims, upon the ground that they constituted no defense to plaintiff's cause of action, and that the motion was overruled. The action of the court in overruling the motion is now assigned for error.

It however further appears that after the motion to strike out was overruled, that plaintiff filed a reply to the same matters that he moved to strike out, the legal effect of which was to waive his right to have that ruling reviewed by this court. *Williams et al. v. Railroad*, 112 Mo. 463; *Ely v. Porter*, 58 Mo. 158; *Gale v. Foss*, 47 Mo. 276; *Scovill v. Glasner*, 79 Mo. 449; *Coffman v. Walton*, 50 Mo. App. 404.

Nor do we think that defendant was estopped to plead that he was the real party in interest by reason of the fact that he demurred to the original petition filed by plaintiff in which he was joined with Gwin in the same count. The demurrer only went to the sufficiency of the petition, and nothing else was passed upon.

The court held that Gwin, as principal, and defendant, as guarantor, could not be united in the same count of the petition, and nothing more.

There was no estoppel in the ruling upon the demurrer.

Plaintiff contends that the court erred in permitting the defendant Wear to state how much coal the mine would have produced if it had been as represented by Walser. While this evidence was admitted over the objection and exception of plaintiff, it was subsequently stricken out on motion of plaintiff, and whatever of error had been committed by reason of its admission was corrected by the action of the court in striking it out.

A further complaint is that the court over plaintiff's objection permitted defendant to testify as to receipts and expenditures attending the mining of coal from books kept by the lessee, Gwin, and of which defendant Wear had no personal supervision, and without producing the books. This evidence was clearly inadmissible and should have been excluded had the objection that the books were the best evidence been made, but the objection was that they were incompetent as testimony, hence the objection was properly overruled. They were shown to have been correctly kept and would have been admissible in evidence had they been offered as such. *Robinson et al. v. Smith*, 111 Mo. 205; *Anchor Milling Co. v. Walsh*, 108 Mo. 277.

Plaintiff offered in evidence the abandoned pleadings of defendant as tending to show that the defense of fraud was an afterthought, which, on objection of defendant, were excluded by the court, and this ruling is also assigned for error. This contention is predicated on the fact that defendant had twice undertaken in different answers to set up the facts in relation to the leasing of the coal mine, and had not charged that

the lease was obtained by fraud. The rule in this State seems to be that such pleadings are admissible in evidence when they contain admissions or statements of facts against the interest of the party in whose pleadings they appear. *Dowzelot et al. v. Rawlings*, 58 Mo. 75; *Anderson v. McPike*, 86 Mo. 293; *Bailey v. O'Bannon*, 28 Mo. App. 39. While the pleadings offered in evidence contained no admission or statement against the interest of defendant, it was not charged in either of them that the contract of lease was obtained by fraud as was alleged in the answer of defendant upon which the case was tried, which we think tended to show that the question of fraud on the part of plaintiff in obtaining the contract of lease had not occurred to defendant until after the filing of his second answer, and should have been admitted for that purpose. *Hodges v. Torrey*, 28 Mo. 99. If the lease was obtained from defendant by fraud, he knew it at the time of filing his first and second answers, and it is to be presumed if the contract was in fact obtained from him by fraud on the part of plaintiff, that he would have so alleged in his first and second answers.

After the evidence was concluded on the trial of the fourth defense and first counterclaim, plaintiff insists that he interposed a demurrer thereto, which was overruled, but it does not appear from the record that any such demurrer was offered. But as defendant concedes that the same question, that is, that of the sufficiency of the evidence to sustain the verdict of the jury, is raised by a peremptory instruction which was asked by plaintiff asking the court to instruct the jury to find for him, which was refused, we will consider the question from that standpoint.

As guarantor defendant had the right to avail himself of any defense to plaintiff's cause of action that Gwin had, and to show that the contract of lease was ob-

tained by fraud and fraudulent representations. Upon this branch of the case the jury found in favor of the defendant. Their verdict received the sanction of the trial court who heard the evidence. And we are not prepared to say that there was no substantial evidence to support that finding, and it is only in such circumstances that this court will interfere. It is true that there was evidence that defendant examined the mine in person, and had others to do so for him with a view of ascertaining the thickness of the strata of coal, quantity, and all about the mine, which tended strongly to show that he was not induced to have the lease executed by reason of any representations of the plaintiff, but rather that he relied upon his own investigation and that of his employees. This, however, was a question for the jury, and they found adversely to this view.

But we are unable to see how Wear, under the facts disclosed by the record, could recover against plaintiff on a counterclaim in favor of Gwin. The relations of plaintiff and Gwin were fixed by the lease, and that of defendant to both plaintiff and Gwin by the written guaranty. They had no interest in common growing out of the lease, which was an independent contract from that of the guaranty; nor could the relations of the parties be changed by parol evidence. Wear has done nothing which entitles him to be subrogated to the rights of Gwin, to any cause of action which may have existed in his favor. Moreover, plaintiff was entitled under the contract to compensation for injuries to his mine, if any, by reason of the noncompliance on the part of Gwin with the terms of the contract, as well also as for the royalty not paid on coal mined, and also to compensation for tools and mining implements delivered to Gwin by plaintiff and not returned to plaintiff by Gwin before the commence-

ment of this suit.   While Gwin would be entitled to recover against plaintiff for any damages that he may have sustained by reason of any fraud practiced upon him by plaintiff, and while defendant could avail himself of all defenses to this action which Gwin may have had, he could not, under the facts disclosed by the record, avail himself of any counterclaim that Gwin may have had against plaintiff.   He was merely guarantor for the performance of the terms of the lease on the part of Gwin, and was not simply from that fact, when sued as such, in a position to avail himself of any counterclaim that Gwin may have had against plaintiff.

As it follows from what has been said that the judgment must be reversed, we deem it unnecessary to pass upon the instructions, and other questions raised by plaintiff in his brief.   No such questions may arise upon another trial of the case.   The judgment is reversed and the cause remanded.

GANTT, P. J., and SHERWOOD, J., concur.