**C. T. CARTER, Appellant-Respondent,**

v.

**MATTHEY LAUNDRY & DRY CLEANING COMPANY, a Corporation, Mabro Investment Company, a Corporation, and National Laundry, Inc., a Corporation, Appellants-Respondents.**

No. 48432.

Supreme Court of Missouri,

Division No. 2.

Oct. 9, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 13, 1961.

August W. Jaudes, A. Robert Belscher, St. Louis, for appellant Carter.

Flynn, Parker & Badaracco, Norman C. Parker, St. Louis, for respondents.

STORCKMAN, Judge.

This is an action in two counts for damages claimed to have been sustained by the plaintiff, C. T. Carter, as the result of an alleged breach of a written contract entered into between him and the defendant, Matthey Laundry & Dry Cleaning Company in connection with the liquidation of National Laundry Company, a corporation. The plaintiff alleged that certain assets were liquidated in a manner violative of his contract and that he was thereby denied remuneration to which he was entitled.

Count 1 of plaintiff's second amended petition involved the disposition of the real estate and plant equipment and was directed against Matthey Laundry & Dry Cleaning Company and Mabro Investment Company, both Missouri corporations. On this count the jury found in favor of the plaintiff and against both defendants in the sum of $20,000. The defendants filed separate motions for judgment in accordance with their motions for directed verdicts or, in the alternative, for a new trial. The defendants' motions for judgment were overruled, but their separate motions for a new trial on Count 1 were sustained on the ground that the verdict was against the weight of the evidence. The defendants have appealed from the overruling of their motions for judgment as to Count 1. The plaintiff has appealed from the order sustaining the defendants' motions for a new trial.

Count 3 involved "the customer accounts of the National Laundry Company and the good will attached thereto" and sought a judgment for $21,951.50 against Matthey Laundry & Dry Cleaning Company and National Laundry, Inc., also a Missouri corporation. The jury found in favor of the defendants on this count. The plaintiff filed his motion for a new trial as to Count

which motion was overruled and he appealed.

Other counts of the second amended petition have gone out of the case. A previous appeal in this litigation was before this court in Carter v. Matthey Laundry & Dry Cleaning Co., Mo., 330 S.W.2d 771. In the present appeal the plaintiff contends that the court erred in granting the defendants a new trial on Count 1 on the ground that the verdict was against the weight of the evidence because the plaintiff had been granted a new trial on the same ground as a result of the first trial; and that as to Count 3 the court erred in admitting incompetent evidence offered by the defendants. The defendants' appellate contentions are that their motions for judgment should have been sustained as to Count 1 because the plaintiff's evidence was insufficient to justify the submission of Count 1 to the jury; that the court was justified in granting the defendants' motions for new trial for the reason specified and others; and that the evidence of which the plaintiff complains as to Count 3 was properly admitted. The defendant Matthey Laundry & Dry Cleaning Company will sometimes be referred to as Matthey Company or Matthey; the Mabro Investment Company as Mabro; and the National Laundry Company as National Company or National.

Since 1936 plaintiff Carter had been president of National Laundry Company which owned and operated its plant at Laclede and Channing Streets in St. Louis. For a number of years family laundry business had been on the decline and National accounts were mostly commercial, consisting of hotels and motels. The defendant Matthey Company was also engaged in the laundry business in St. Louis. L. H. Matthey, Jr., was its president and L. H. Matthey, Sr., had also been connected with the Company but had retired at the time of the trial.

On November 3, 1954, an ordinance of the City of St. Louis found the Mill Creek Valley area in St. Louis to be blighted and that redevelopment of the area was necessary. There had been newspaper publicity of this proposal in September 1954. The ordinance provided that the study and planning for acquisition, clearance, improvement and sale for redevelopment and rehabilitation of the land in said blighted area should be undertaken by Land Clearance for Redevelopment Authority of the City of St. Louis. The blighted area included the location of the National plant and real estate. Sometime in the fall of 1954, Mr. Matthey, Jr. contacted the plaintiff and after numerous conferences submitted alternate written proposals. One was for the purchase of the shares of capital stock and the other was for the purchase of the business customers and trucks of National Laundry Company. Both of these proposals were rejected, but a third, submitted later, was accepted. This proposal was made in writing by Matthey Company to the plaintiff, C. T. Carter, and Percy W. Neslage as representatives of the shareholders of National. The proposal offered to purchase all of the outstanding stock of National Company, consisting of 3,000 shares at a price of $40 per share and was conditioned upon the acceptance by the holders of at least 80 per cent of the outstanding stock and the deposit of their shares. The purchase of the shares deposited was to be closed within 10 days after acceptance by the required number of shareholders and 50 per cent of the purchase price was to be paid on the date of closing and the balance on or before one year from the date of closing with interest at 5 per cent on the unpaid balance. The proposal called for the resignation of all directors and officers of National Laundry Company except the plaintiff and that he would be employed at not less than his present salary for a period of at least three months. This written offer to purchase was dated March 14, 1955. The offer was accepted by holders of approximately 91 per cent of the capital stock of National which included 158 shares owned by the plaintiff. The sale was closed and the first

installment of $20 per share, which was 50 per cent of the purchase price, was paid on March 23, 1955.

Under date of March 22, 1955, the Matthey Company entered into a contract with the plaintiff individually which was introduced in evidence as plaintiff's Exhibit 3. This is the contract upon which plaintiff's claim is based. The first two paragraphs of this agreement provide that the plaintiff would be employed for a period of three months from the closing date of the purchase agreement at the rate of $230 per week, which period might be extended for an additional three months by mutual agreement. The third paragraph restricted the plaintiff from engaging in the laundry business in a specific area for a period of three years. The consideration for this covenant was keyed into the liquidation of the National Laundry Company with certain minimum guarantees as provided in paragraph numbered 4, which is as follows: "In consideration of the agreement of Carter contained in paragraph 3 Matthey shall pay to Carter a sum computed as follows: Upon liquidation of the National Laundry Company in the event the proceeds of such liquidation exceed $115,000 Carter shall be paid an amount equal to the portion of such excess distributable to Matthey by virtue of its ownership of stock in National Laundry Company which shall be paid to Carter in three equal annual installments, the first payment to be made upon receipt by Matthey of its final liquidating distribution of stock in the National Laundry Company, and the remaining payments to be made on the same date of each year thereafter for two years.

"In the event that the liquidation of National Laundry Company is completed in less than six (6) months, the minimum amount to be paid to Carter hereunder shall be Three Thousand Dollars ($3,000.-00), irrespective of the actual amount of the proceeds of the liquidation, and in the event the liquidation is not completed until after six (6) months, the minimum amount to be paid to Carter shall be Five Hundred Dollars ($500), the first one-third (⅓) of which shall be payable May 1st, 1956, if the liquidation is not completed prior to that time.

"In the event that any real estate of National should be purchased by Matthey, the price to be paid for the same shall be determined by mutual agreement between Matthey and Carter, or if they are unable to agree the price shall be determined by an appraiser selected by mutual agreement between Carter and Matthey."

After Matthey Company acquired the controlling stock, the board of directors of National Laundry Company on March 23, 1955, adopted a resolution recommending to the shareholders that the Company be dissolved. On April 5, 1955, the shareholders adopted a resolution providing for the dissolution of the corporation, the liquidation of all of its assets and their distribution to the shareholders and authorizing the directors and officers to complete the liquidation and to declare liquidating dividends. On the same day the directors met and implemented the plan of liquidation by authorizing the officers to proceed with the liquidation "as rapidly as possible" and to sell the assets including the real estate. The officers were L. H. Matthey, Jr., the plaintiff, and Edward G. Fohrell. The liquidation was completed within a year after approval of the plan by the shareholders and directors. The total amount realized was $114,720, which was less that the $115,000 required to provide the plaintiff with compensation in excess of the minimum guaranteed by his contract. The items of which the plaintiff complains are the real estate and plant equipment and the customer accounts and good will. The real estate was not disposed of within the first six months of the liquidation period and the plaintiff was accordingly paid the sum of $500 in accordance with his contract. The real estate was first placed with Stifel Realty Company and no offers of purchase were received. Thereafter the property was listed with the Henry R. Weisels Realty Company

and an offer of $35,000 for the real estate and equipment was received which was rejected.

Near the end of one year after liquidation was authorized, Mr. Matthey, Sr., on behalf of a syndicate, which was later organized as Mabro Investment Company, offered $41,500 for the real estate and equipment. This offer was accepted by the board of directors of National over the protest of the plaintiff and Mr. Neslage who were board members. Mabro Investment Company later sold the equipment for $5,000, of which sale the plaintiff makes no complaint. So it may be considered for the purpose of this case that Mabro acquired the real estate for a price of $36,500. The depositing shareholders were paid the purchase price of $40 per share. The shareholders, including Matthey as purchaser and the nine per cent who did not sell, received their liquidating dividends in complete cancellation of their stock. Further details of the evidence will be considered in connection with the questions presented.

The plaintiff contends the trial court erred in refusing to grant him a new trial on Count 3 because of the admission in evidence of two documents. They are defendants' Exhibit G, which is plaintiff's original petition, and plaintiff's Exhibit 2, the stock purchase agreement.

The original petition complained only of the disposition of the real estate and equipment of National. The subject matter of the original petition was incorporated as Count 1 in an amended petition and other counts were added, among which was Count 3, wherein the plaintiff for the first time complained of the disposition of the customer accounts and good will of National. Johnson v. Flex-O-Lite Mfg. Corp., Mo., 314 S.W.2d 75, 79 [4], and the other authorities cited by the plaintiff are concerned with live pleadings in which there were multiple pleas. These authorities generally hold that in such a case one of the multiple pleas may not be used as an admission upon another issue in the same case. Since we are here concerned with an abandoned pleading, the authorities cited ar not decisive.

■■■ An abandoned pleading is admissible in evidence against the party in whose behalf it was originally filed if the pleading contains admissions or statements of fact against the interest of such party. Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 899 [14]. The original petition tended to show that plaintiff's claim with regard to customer accounts and good will had not occurred to him until sometime after the filing of his original petition and was an afterthought. For this reason it was properly admitted in evidence. Walser v. Wear, 141 Mo. 443, 42 S.W. 928, 933 [4]; Robinson Steel Construction Co. v. White, Mo.App., 305 S.W. 2d 58, 61 [4]. We need not pass upon the defendants' further contention that plaintiff's objection to the exhibit was insufficient and that its admission was in fact invited.

Plaintiff's Exhibit 2, the stock purchase agreement, was first injected into the trial by the plaintiff. It was marked as an exhibit at his request and was identified by him during his direct examination. The stock purchase agreement was addressed to and signed by the plaintiff, C. T. Carter, and Percy W. Neslage, as agents for the shareholders. Attached to the exhibit was a condensed balance sheet and an income and expense account of National as of December 31, 1954. The plaintiff testified with reference to some of the exhibit's terms and that pursuant to it Matthey purchased 2,732 out of the total of 3,000 shares. On cross-examination he testified without objection that the balance sheet and income and expense account attached to plaintiff's Exhibit 2 was prepared under his supervision and reflected the book value of the various assets listed and that the total assets shown on the balance sheet was $94,354.41. The plaintiff had previously offered and read in evidence Matthey's letter of November 10, 1954, containing the alternate proposals which had been rejected by the shareholders. The minutes of the meeting of the

board of directors of National, held February 17, 1955, were put in evidence without objection. The minutes show the terms of Matthey's offer which was accepted and that the board approved the offer. The plaintiff pleaded the purchase of the stock by Matthey.

When Exhibit 2 was offered by the defendants, the plaintiff objected "because the stock proposal agreement is not an issue here at this trial". The court called attention to the fact that the plaintiff had offered the exhibit in evidence for some purpose and counsel for the plaintiff stated that his purpose was to show there was a purchase of the stock by Matthey. The court then overruled the objection stating that the exhibit was in evidence for all purposes. The plaintiff cites a statement from the previous appeal to the effect that the purchase of the shares of stock by Matthey was a separate and distinct transaction from the contract between Carter and Matthey. 330 S.W.2d 771, 780. The admissibility of the stock purchase agreement, however, was not an issue in the first trial. The transcript of the record of the previous appeal shows that the stock purchase agreement was identified and read in evidence without objection. The question of its admissibility was not decided.

■■ The plaintiff is in no position to complain of the admission of the exhibit in evidence. Since the plaintiff had identified and used in evidence portions of the stock purchase agreement, the defendants were entitled to introduce the entire exhibit. Dorn v. St. Louis Public Service Co., Mo. App., 250 S.W.2d 859, 867 [12]; Jones v. Atlanta Life Ins. Co., Mo.App., 247 S.W.2d 314, 316 [1]; Miller v. Smith, Mo.App., 275 S.W. 769, 772 [9]; Willgues v. Pennsylvania R. Co., 318 Mo. 28, 298 S.W. 817, 824 [9]; State ex rel. State Highway Commission v. Howald, Mo., 315 S.W.2d 786, 791 [12]. The exhibit constituted relevant evidence and the court did not err in admitting it. Having disposed of all of plaintiff's contentions as to Count 3, we hold that

the court did not err in refusing to grant him a new trial on that count.

■ As to Count 1 the plaintiff contends that the trial court erred in granting the defendants a new trial on the ground that the verdict was against the weight of the evidence. The defendants' position is that their motions for judgment should have been given or, in the alternative, that they were entitled to a new trial for the reason given as well as others set out in their motions for new trial. The plaintiff urges that since the defendants were granted a new trial they are entitled to have reviewed only the specifications set forth in their motions for new trial, citing Schneider v. St. Louis Public Service Co., Mo., 238 S.W.2d 350, 355. In the respect noted, the Schneider case has been reviewed and overruled. See Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 77 [11], and Wilhelm v. Haemmerle, Mo., 262 S.W.2d 609, 611 [2]. The question of the submissibility of plaintiff's claim under Count 1 has been preserved and is properly before us since it may be urged in opposition to plaintiff's appeal even though the defendants did not file an appellants' brief. Schmittzehe v. City of Cape Girardeau, Mo., 327 S.W.2d 918, 920 [1]; Hart v. Midkiff, Mo., 321 S.W.2d 500, 505 [4]; Page v. Hamilton, Mo., 329 S.W.2d 758, 761 [1]. We will first take up the defendants' contention that the plaintiff did not make a submissible case on Count 1 of his amended petition.

The defendants contend there was no breach of contract in selling the real estate at the time it was sold because the liquidation of the National Company was an integral part of the contract and that the plaintiff agreed that such liquidation would be completed within a 12-month period. All of the evidence is to the effect that the liquidation was intended to be completed within a period of one year in order to secure the tax advantages of § 337, I.R.C., 26 U.S.C.A. § 337. This section provides in substance that, if a corporation adopts a plan of complete liquidation and within

the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period. The consequences of failing to complete the liquidation of National within the 12-month period are not fully developed in the evidence and are not important to our present consideration.

The controlling fact is that the plaintiff's testamentary admissions establish that he agreed that the liquidation would be completed within the 12-month period. The plaintiff testified that he had extensive discussions with Mr. Matthey, Jr., concerning the tax consequences of liquidating within one year; that it was a part of the agreement that the National Company be liquidated within one year; that the "original deal was made on the assumption that the laundry would be liquidated in one year because of Federal taxes"; that it was the desire of Matthey that National Company be liquidated in one year because of federal taxes and that the plaintiff "agreed with their desire"; that the plan to liquidate was a part of the agreement he had with Matthey; that "I went along on that one year agreement"; and that he agreed that the National Laundry Company had to be liquidated in one year because of tax purposes. We have examined the transcript of the previous appeal and find no evidence that the plaintiff agreed to the liquidation of the property within the 12-month period following the adoption of the resolution to liquidate. This distinguishes the present appeal from the previous one.

 The plaintiff's contract itself makes no provision that the period of liquidation should be more or less than one year. It simply provides in what manner the plaintiff shall be paid upon liquidation of the National Company with a larger minimum guarantee if the liquidation is completed in less than six months. Since there was no agreement to the contrary, it was in order for the stockholders and directors of National to undertake the completion of the liquidation in the 12-month period in order to secure the benefits of § 337 I.R.C. In the present case it is apparent from the plaintiff's own testimony that he agreed to a liquidation of all of the assets of National including the real estate within the 12-month period. In this state of the record the plaintiff cannot be heard to complain that National sold the real estate within the 12-month period.

In fact it is not the theory of the plaintiff's submission that there was any violation of his agreement in selling the real estate within the 12-month period. Plaintiff's verdict-directing instruction on Count 1 in substance requires the jury to find that the real estate constituted an asset of National "which was to be liquidated or whose fair market value was to be considered in determining the amount of the proceeds in liquidation under plaintiff's contract"; that the defendant Matthey caused the real estate to be sold at "less than the fair market value of said real estate *at the time of sale*" (Italics added); and that the price was fixed by Matthey "solely for the purpose of keeping the total proceeds of the liquidation of the assets of the National Laundry Company below the sum of $115,-000.00"; that Mabro through its officers, directors and stockholders did plan, conspire and cooperate with Matthey to cause the real estate to be sold at a price below its fair market value "for the purpose of depriving the plaintiff from receiving any amount which would be due him under the contract if the said real estate were sold at its fair market value". The plaintiff's submission seems to be solely upon the theory that the real estate was sold for less than "its fair market value" *at the time it was sold* and at a price determined for the sole purpose of preventing the plaintiff from receiving any additional compensation.

 The next inquiry is whether there was any evidence of breach of the contract in selling the real estate for $36,500. There

is no evidence that "fair market value" was to be the standard as to the real estate or any other asset in fixing the plaintiff's remuneration under the contract. It is not clear how this concept got into the case. None of the contracts so provided and it seems to be entirely out of place in circumstances where the real estate was to be sold under a plan for liquidation within a 12-month period and where the future of the property was beclouded by a threat of condemnation for the redevelopment of the blighted area. The trial court recognized this and in his memorandum explaining his ruling on the aftertrial motions filed as to Count 1 stated: "It is true that a witness for plaintiff said the property was worth $70,000 and another said $62,000, but these figures were based on the willing seller and willing buyer theory which does not apply here since because of the threat of condemnation there were no 'willing buyers' or buyers of any kind except speculators at a heavy discount.

■ "The subsequent sale to the Land Clearance Authority for $63,300 cannot be taken as a standard of value at the time of the sale to Mabro since the evidence shows clearly that no such amount could have been obtained at that time. It should also be remembered that had the property not been sold within one year, tax liabilities would have accrued, as to the amount of which there is no evidence. * * * Defendants should not be penalized for failing to sell at an unobtainable price."

■ The term "fair market value" means the price which property will bring when it is offered for sale by an owner who is willing but under no compulsion to sell and is bought by a buyer who is willing or desires to purchase but is not compelled to do so. Metropolitan St. Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860, 861. In this case the National Company was in liquidation and was under the compulsion of selling within the 12-month period provided by § 337 if the tax advantages provided by that section were to be obtained.

The property was also under the threat of condemnation which, if concluded, would result in a forced sale. The situation was fraught with many uncertainties such as whether the condemnation proceedings would be carried to a conclusion or perhaps be abandoned prior to the taking, how long the owner would have to hold, maintain and pay taxes on the property, and what amount he would be able to obtain by negotiation or by trial. This made the market a speculative one which was recognized by all concerned. Even the plaintiff's expert witnesses testified that under the circumstances a speculator would be the only one that could be expected to buy the real estate. We find nothing in the evidence which justified a belief that the property could be sold for its fair market value under these circumstances.

The plaintiff was under no illusion as to the hazards and difficulties of liquidating the Company and disposing of its property in these circumstances. At the meeting of the directors of National on February 17, 1955, the board agreed to recommend Matthey's proposal to buy at $40 per share. The minutes of the meeting which were signed by the plaintiff, as president of National, record that the plaintiff told the directors that he could see no future for National under the present operating setup and he described the alternatives which the board could take to protect the interest of the Company's stockholders as follows (defendants' Exhibit D):

"1—If they felt that they were willing to chance the condemnation of the Company's property by the slum clearance authorities within a two year period, they would have to consider making a small profit, losing a small or large amount of money due to unforeseen conditions and expenses, and if they were lucky, we might salvage more than $40 per share for the Company's stock, but they naturally would be gambleing on what might or might not happen.

"2.—The Company could liquidate all property and Goodwill for the Company's Stockholders, but again they would be gambling as to what might be received by the Company's Stockholders in the event this step was taken.

"3.—The Board could accept Mr. Matthey's offer of $40 per share, and present same to the Stockholders for their approval. He mentioned to the Board that on this basis no gamble would be made as to what a Stockholder would receive per share, and from everything he could ascertain this would be the cleanest deal for all concerned."

The plaintiff was one of the officers in charge of the liquidation of the assets of National including the real estate. He assisted in the liquidation until March 23, 1956, except for the time he was in Florida during the latter part of 1955. He listed the real estate with a sales agency immediately after the adoption of the resolution to liquidate but received no offers. Other inquiries were made, including discussions with the Land Clearance representatives. Late in the year the real estate was listed with another agency and an offer of $35,000 was received which was rejected by the board of directors. Near the end of the 12-month period of liquidation, L. H. Matthey, Sr., L. H. Matthey, Jr., and Robert B. Brooks formed a syndicate which was later incorporated as Mabro and offered $41,500 for the real estate and equipment which offer was the equivalent of $36,500 for the real estate. When the plaintiff objected, the property was offered to him for the same price but he refused to buy it because he said he was not interested although he had the funds to make the purchase. He was also given the opportunity to join with the other three in purchasing the property at that price but declined to do so. The plaintiff testified he used his best efforts but was unable to find a purchaser during the one-year period following the purchase by Matthey of the National stock. There is no evidence in the record that a price in excess of $36,500 could be obtained for the real estate on the market that existed during the 12-month period in question. The fact that Matthey offered to approve a sale to the plaintiff at that price is some evidence that the purchase price was a fair one under the circumstances. But it is sufficient to say that there was no evidence that a better price could or should have been obtained at the time of the sale or during the 12-month period of liquidation. The plaintiff calls attention to the testimony of L. H. Matthey, Jr., that he did not want to go over the $115,000 because anything above that figure would go to the plaintiff. If there was evidence that the real estate could or should have brought more on the existing market, this statement would have some significance, but the defendants cannot be held liable for not voluntarily paying more than they were legally obligated to pay.

The defendants assert that the sale of the real estate and equipment was in good faith and there is nothing in the record to indicate otherwise. The plaintiff was advised in January 1956 of the intention of the syndicate to purchase and he was invited to take all or any part of the ownership but chose not to do so. In the final analysis there was no concealment or subterfuge either as to the parties who were purchasing or the amount they were paying. There was no evidence that anyone but the three individual stockholders of Mabro shared in whatever profit was made on the sale to Land Clearance.

There was some rather indefinite testimony by the plaintiff that he requested the selection of an appraiser by mutual agreement with Matthey in accordance with the contract provision on the theory that the real estate was being purchased by the Matthey Company. We need not go into the merits of this contention, however, because it was not submitted by the plaintiff's instruction and therefore must be deemed to be abandoned as an issue in the case. Page v. Hamilton, Mo., 329 S.W.2d 758, 762 [5].

■ Our conclusion is that the evidence was not sufficient to make a submissible case on Count 1 and that the defendants' motions for judgment should have been sustained. It is therefore unnecessary to consider other questions presented. Since the case has been twice tried, the parties have had ample opportunity to develop their legal theories and adduce all material evidence.

Accordingly the judgment on Count 1 is reversed and the cause remanded with directions to enter judgment in favor of both defendants on Count 1; the judgment on Count 3 is affirmed.

All concur.