## SWIFF v. MICHAELIS.
### No. 10406.

Court of Civil Appeals of Texas. Galveston.
Nov. 4, 1937.

Rehearing Denied Dec. 2, 1937.

Lockhart, Hughes & Lockhart, of Galveston, for appellant.

Rupert R. Harkrider and Terry, Cavin & Mills, all of Galveston, for appellee.

CODY, Justice.

This is an action by appellee to recover damages to his automobile and person resulting from a collision with a truck belonging to appellant, which occurred on the Galveston-Houston Highway the night of November 5, 1934, not far from League City.

The negligence charged by appellee, among other things, was that the driver of appellant's truck allowed it to remain standing upon the paved and traveled portion of the highway, at night and when it was raining, when it was possible to have parked it on the shoulder of the road; also in leaving the truck without leaving a clear and unobstructed width of not less than 15 feet upon the mainly traveled portion of the highway opposite such standing truck, free for the passage of other vehicles; also in failing to have any lamp or light upon the truck lighted while it was thus parked upon the traveled portion of the highway; in sending the truck upon the highway without a clearance lamp on its left side, at its rear, displaying a red or yellow light visible under normal atmospheric conditions for a distance of 500 feet at the left rear of the vehicle, and without having in lieu of such clearance lamp an adequate reflector conforming in color and marginal location to a clearance lamp and visible at least 200 feet when opposed by the light of a motor vehicle displaying lawful undimmed lights at night on an unlighted highway, in violation of section 9, art. 827a, Vernon's Ann.P.C.; all of which were severally alleged to be the proximate cause of the collision.

Appellant answered by general denial, and by pleading contributory negligence on the part of appellee in many particulars; in traveling over the highway at night at a high and reckless speed, when it was extremely dark, and when an unusually blinding rain was falling which blotted out all vision, and which charged plaintiff with knowledge that cars would probably be caused to stall on the highway. Appellant further answered that the truck was in proper shape when it left Galveston, but its motor was drowned out by the terrific rain, and when stalled was on its proper side of the highway, and could not be moved further during the storm, despite continued efforts to do so. That while so stalled, appellant's loaded truck, weighing 14,000 pounds, was run into from the rear with terrific force, bumping it forward some 70 feet, smashing the windshield, scattering tools over the highway, breaking its bedrail at the back, and breaking and disconnecting the truck's rear lights and their wires; all being proximately caused by the negligence of appellee. Appellant also alleged under the facts and circumstances appellee knowingly, willfully, and recklessly assumed the risk of a collision with any car that might be stranded on the highway due to the heavy rain. Appellant also sought damages for injuries to his truck.

The evidence in this case in uncommonly conflicting. It appears, however, without conflict that on the night in question it rained very hard at times, and slacked up at times. One of appellee's witnesses, who was working for a garage at League City that night, testified that during the night he saw 15 automobiles whose engines had been drowned out. Appellee's version of the collision and the surrounding circumstances is fairly presented by the two following excerpts from his testimony:

"For about an hour before I left (Galveston) it was raining tremendously hard, and I decided not to start until the next morning. Then it practically stopped, and after it at least slacked up I started on the trip,

and I got, I don't know how many miles, a few miles this side of League City, when it started raining extremely hard. In .fact, I have never seen it rain harder. However, I pulled into a filling station and waited for it to stop or slack up and it slacked up considerable, and I started out again, and after I had gone a few miles it started raining again hard, but not too hard but what I could see another car' on the highway. There were several of them that were going very slow, as slow as ten miles an hour. I wasn't going over twenty-five or thirty at most. It wasn't raining too hard for me to see the other cars, including some trucks that had tail lights and side lights.

"I had no difficulty in passing them. There was a car coming towards me with bright lights, and I didn't see this truck that I hit until I just looked up all at once and it looked like I was right into a building, and had there been lights I am sure I would have seen it. I am not a fast driver."

Again:

"Q. Was that extremely heavy rain coming down when you came into the collision with the truck? A. Not the heaviest, no.

"Q. That rainfall that was falling then, had you seen rain as heavy as that? A. Yes.

"Q. Was it unusually heavy then? A. It was heavier than usual, but it wasn't heavy enough to obstruct my view in any way driving. My windshield worked perfectly and my lights were perfect and I was driving at a reasonably slow rate of speed. In fact, if I had been driving very fast, the platform of this truck was so high·it just scraped the top of my radiator, even as fast as 40 or 45 miles, I would have gone right under that truck, and as it was the truck—there wasn't any more than 4 feet, in my opinion, that separated the two cars, and the glass from my two lights was in front of my car, and even some of it was under the back end of the truck."

The evidence of appellant's witnesses was to the effect that the truck's engine had been drowned out, and that it was raining too hard to dry the coils at the time of, and before, the collision; that the two negroes in charge of the truck had attempted to push it off the paved portion of the highway, but, being loaded with 14 bales of cotton, and being of the trailer type, having six wheels, and weighing as it was then loaded about 14,000 pounds, they found it was impossible; and that besides, the shoulder of the high-

way was not broad enough at that point to have moved the truck onto it. Appellant's evidence further was that the truck had been inspected before it left Galveston, and its engine and lights were in perfect condition; that it had been again inspected at Dickinson, where it refilled with gasoline. The taillights were found to be burning perfectly. The men in charge of the truck were sitting in the cab when the collision occurred. Their testimony was that the violence of the impact knocked the truck's windshield out, the tool box loose, and scattered tools and nails that were in it along the highway for some 70 feet, the distance the truck was bumped forward; and that the wires connecting the taillights were broken, and the taillights were extinguished. That the moment preceding the collision, all the lights of the truck were burning. Appellant's evidence further was that when appellee asked the negroes why their taillights were not burning they replied they had been until appellee struck the truck and broke the rear wires; and that one of them demonstrated by connecting the broken wires, making the taillights come on. This last testimony appellee denied point blank at first, but finally testified that he could not be absolutely sure this demonstration did not occur, but positively did not believe that it did. The undisputed evidence showed that appellee had been knocked unconscious or stunned, but regained consciousness about the time the negroes got to him. They helped him out of his car.

Appellee adduced evidence by a garage man that his car was about four feet from the rear of the truck, and the glass of his headlights was there on the highway to indicate that this was the point of the collision. It was further testified on behalf of appellee that when help arrived, none of the lights of the truck were on, not even the headlights. Appellee further adduced evidence that the shoulder of the highway was broad enough and hard enough to have put the truck on to it, and that they should have placed the truck on it before the engine died, and some evidence that it might have been pushed off the paved part of the highway by them.

The special issues submitted to the jury, and the answers they returned, were as follows:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that the driver of the Swiff truck could have parked said truck on the shoulder

of the road at the time and place in question?" Answered: "Yes."

"Special Issue No. 2.

"Do you find from a preponderance of the evidence that the failure of the driver of the Swiff truck to park said truck on the shoulder of the highway was a proximate cause of the collision between the Michaelis automobile and the Swiff truck?" Answered: "Yes."

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that the driver of the Swiff truck parked the same without leaving a clear and unobstructed width of not less than 15 feet upon the mainly traveled portion of the highway opposite such parked truck, free for the passage of other vehicles?" Answered: "Yes."

"Special Issue No. 4.

"Do you find from a preponderance of the evidence that such method of parking said truck was a proximate cause of the collision between the Michaelis automobile and the Swiff truck?" Answered: "Yes."

"Special Issue No. 5.

"Do you find from a preponderance of the evidence that just before the collision in question the truck belonging to J. Swiff was parked upon the mainly traveled or paved portion of the highway without having at the rear thereof any light burning?" Answered: "Yes."

"Special Issue No. 6.

"Do you find from a preponderance of the evidence that such parking of such truck without a light at the rear was a proximate cause of the collision between the Michaelis Automobile and the Swiff Truck?" Answered: "Yes."

"Special Issue No. 8–a.

"Do you find from a preponderance of the evidence that the absence from the Swiff truck of a clearance lamp on the left side of such vehicle at the rear thereof displaying a red or yellow light visible under normal atmospheric conditions for a distance of 500 feet at the left rear of the vehicle, and without having in lieu of such clearance lamp an adequate reflector conforming in color and marginal location to a clearance lamp and visible at least 200 feet when opposed by the light of a motor vehicle displaying lawful undimmed lights at night on any unlighted highway was a proximate cause

of the collision in question?" Answered: "Yes."

"Special Issue No. 9.

"Do you find from a preponderance of the evidence that defendant J. Swiff was negligent in sending his truck out on the highway under the circumstances in question?" Answered: "No."

"Special Issue No. 10.

"Do you find that such negligence, if you have found it to be negligence, was a proximate cause of the collision between the Michaelis automobile and the Swiff truck?" Answered: "No."

"Special Issue No. 12.

"Do you find from a preponderance of the evidence that just prior to the collision the plaintiff, Albert L. Michaelis, was driving at a high and reckless rate of speed in view of all the surrounding circumstances?" Answered: "No."

"Special Issue No. 13.

"Do you find from a preponderance of the evidence that the plaintiff was driving at such rate of speed that he was unable to stop his automobile within the distance that he could see ahead?" Answered: "No."

We have carefully examined the record in this case, reading the statement of facts in toto, and have carefully examined the able and exhaustive briefs, and have reached the conclusion that can be expressed in the language used by the court in Pennington Produce Co. v. Wonn (Tex.Civ.App.) 49 S.W. 2d 482, 485, where it was said: "The main point arising in the evidence is that of whether or not the plaintiff was guilty of contributory negligence. The failure of the plaintiff to more timely see the objects on the road as he was approaching them may or may not have been excusable under the circumstances. The evidence in reference to this and the evidence opposed thereto may involve, it is believed, an issue for the jury. It may not reasonably be said that, as a matter of pure law, no care was taken to avoid, and no excuse offered by the plaintiff for colliding with, the defendant's unlighted truck left on the highway."

The men in charge of the truck testified with much confidence that the rear lights were on at and before the collision, though they were in the cab at the moment, and not in position to see. Still if the jury accepted their testimony, instead of the evidence adduced by appellee, they would have had to have concluded the rear lights of the truck

were burning. The evidence was sufficient to support the jury's findings. The judgment will therefore be affirmed.

Affirmed.

PLEASANTS, C. J., not sitting.