### OIL CITY IRON WORKS v. STEPHENS.
#### No. 2616.

Court of Civil Appeals of Texas. Waco.
July 20, 1944.

Rehearing Denied Sept. 28, 1944.

Witt, Terrell, Lincoln, Jones & Riley, of Waco, and Davis, Jester, Tyson & Dawson, of Corsicana, for appellant.

Herbert W. Marshall, of Dallas, for appellee.

RICE, Chief Justice.

This suit was instituted by George F. Stephens against Oil City Iron Works, a corporation, for the recovery of damages for personal injuries sustained by himself and his wife when their automobile, at night, crashed into the rear end of defendant's truck which had been stopped and was obstructing plaintiff's right-hand side of the highway.

The jury answered the special issues submitted in favor of the plaintiff. The defendant thereupon filed its motion for judgment non obstante veredicto and plaintiff filed his motion for judgment based on the verdict. The court overruled defendant's motion and entered judgment against defendant and in favor of plaintiff for the damages found by the jury.

Defendant presents this appeal upon the one point that plaintiff's wife, Mrs. Thelma Stephens, who was driving plaintiff's Buick car at the time it collided with the rear end of defendant's truck, was guilty of contributory negligence as a matter of law.

Viewing the facts in evidence and all inferences that may be reasonably drawn therefrom most favorably from the standpoint of plaintiff, and rejecting all evidence to the contrary, we find that the facts are substantially as follows:

The accident occurred about midnight on November 25, 1942, on U. S. Highway No. 75, about twenty-five miles south of Corsicana. The night was clear. Said highway was one of the principal highways of the state, and carried a great deal of vehicular traffic day and night between Houston and Dallas. The right-of-way is 100 feet wide, and the concrete roadway is 18 feet wide, with a black strip down the center. The shoulders of the highway on each side of the concrete, at the point of the collision, are 9 or 10 feet wide, sodded with grass, and slope towards the east and west.

Claude Talley was defendant's employee, whose duty it was to drive the truck involved in the accident. Johnnie Gunter, related to Talley by marriage, a truck driver in the U. S. Army, then at Corsicana on furlough, requested and was granted permission to make the trip to Texas City and return with Talley, and they alternated in driving the truck. At the time of the accident they were returning to Corsicana with a load of rod and sheet steel. At Madisonville the truck was halted and three or four A. & M. College boys were granted permission to. board the truck. At the time of the accident one of these boys was riding in the cab with Talley and Gunter; the others were in the trailer on top of the steel.

The truck was traveling north. After it had passed through Fairfield and reached a point twenty-five miles from Corsicana, Gunter, who was driving, asked to be relieved, and Talley told him to pull off the concrete and he would take the wheel. Gunter then turned the truck to the right-hand side and brought it to a stop, leaving the rear end of the trailer partly on the concrete. Talley immediately went to the rear end of the trailer to see if his load had slipped, and discovered that the rear wheels and back end of the trailer were on a portion of the concrete highway. He did not go immediately to the cab to remove the trailer from the concrete portion of the highway; but did go after an interval of five or six minutes, and was in the act of starting the truck when the collision happened. The truck and trailer were 43 feet long; with its load it weighed 26,000 pounds. The sheet metal extended out behind the truck a distance of 71 inches. It was resting on the bed of the truck, with its forward end tied on top of the cab. Its rear end dropped down below the floor of the truck bed 12 or 14 inches. There was evidence that the truck was stopped just north of the crest of a little hill or rise; and that coming over the hill it would be impossible to see the lights under the truck until "you get awfully close to them;" that with the steel hanging down it. would make it hard to see the lights until "you got awfully close to the truck."

The two truck drivers testified that the truck was equipped with two headlights, four tail-lights, two large reflectors and two clearance lights on each side, and that all of the lights were burning at the time of the collision. The jury found that the tail-lights and other lights on the truck and trailer were on just prior to the collision so as to warn others of the presence of the truck on the highway. No flares

were put out behind or in front of the truck until after the accident. There was testimony that the reflectors were very dirty. Both truck drivers had been drinking prior to the collision.

Mr. and Mrs. Stephens had left Houston that afternoon. On reaching Madisonville they picked up Cartamelia and Lyman, students of A. & M. College. These boys sat in front with Mrs. Stephens, who was driving, while Mr. Stephens occupied the back seat. Mrs. Stephens was an experienced driver, and was familiar with Highway 75 and the fact that it carried a great deal of traffic. She was driving a new Buick automobile, with headlights that enabled her to see on the night of the accident 600 feet in front of her automobile. It was equipped with hydraulic four-wheel brakes in perfect condition. Mrs. Stephens and Cartamelia testified that after leaving Madisonville she was driving at a speed of thirty-five to forty miles per hour, and was keeping a lookout to the front. In answer to a question as to how close she was to the truck before she saw it, Mrs. Stephens testified: "That I can't tell you; it seemed to me I was right on him; and that is all I know." She further testified that shortly prior to the accident she had turned out the dashlight; that she had been trying to drive consistently at thirty-five miles per hour; that she did not know how fast she was driving when the collision occurred. She further testified: "Well, all I remember, it seemed to me I came over a grade, and as I started down the grade here is this object in front of me; it seemed like I was just on him as I came over the grade; as I came over the grade there he stood, and that is all I remember about it." She further testified that on seeing the truck she immediately put on her brakes and attempted to turn around the truck to the left; that she saw no lights on the truck, and that it almost completely obstructed the right-hand side of the road.

Young Cartamelia testified that he had perfect eyesight; that Mrs. Stephens was a steady driver and watched ahead; that he was looking ahead immediately prior to the collision; that he did not see any lights on the truck; that the truck was completely on the pavement; that he was within twenty feet of the truck before he saw it; that he called to Mrs. Stephens and she immediately put on her brakes; that he could not explain why he did not see the truck until he was within twenty feet unless there was a little rise in the highway.

Mr. Stephens did not see the truck prior to the collision. Lyman did not testify. There was evidence that the skid marks left by the Buick were 52 feet in length.

The jury found that Mrs. Stephens did not fail to keep a proper lookout; that just prior to the collision Mrs. Stephens was driving her car at the rate of fifty miles per hour, but that in so doing she was not guilty of contributory negligence; that she was not driving her car at such rate of speed that she could not stop within the distance illuminated by the headlights of the car; that she was not guilty of contributory negligence in failing to stop her car before colliding with the truck; and that plaintiff was not negligent in permitting three persons to ride on the front seat of the automobile just prior to the collision.

When the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised. It is only when the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised "if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." Wininger v. Fort Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150; Texas & P. R. Co. v. Cox, 145 U.S. 593, 12 S.Ct. 905, 36 L.Ed. 829; Brown v. Griffin, 71 Tex. 654, 9 S.W. 546; Texas & P. R. Co. v. Ball, 96 Tex. 622, 75 S.W. 4.

Applying the foregoing rules of law to the facts of this case impels us to the conclusion that the answers of the jury to the special issues submitted are supported by the evidence; and that we would not be warranted in concluding from the evidence that Mrs. Stephens was guilty of contributory negligence as a matter of law.

The judgment of the district court is therefore affirmed.