RAY v. GAGE et al.

No. 15502.

Court of Civil Appeals of Texas.

Fort Worth.

May 21, 1954.

Rehearing Denied June 18, 1954.

Peery, Wilson & Spell, and Kearby Peery, Wichita Falls, for appellant.

Nelson & Sherrod, Wichita Falls, Cantey, Hanger, Johnson, Scarborough & Gooch, and Howard Barker and Charles L. Stephens, Fort Worth, for appellees.

BOYD, Justice.

David M. Ray prosecuted this suit against H. L. Gage and Walter L. Hasley for damages for personal injuries resulting from a collision between an automobile driven by George W. Ray, in which David M. Ray was a passenger, and a truck driven by Hasley and owned by Gage. Judgment was for the defendants, and plaintiff appeals.

Appellant was riding in the front seat of the automobile, on the right side. He had fallen asleep with his right elbow on the window sill or extending through the window. The car approached the truck, which was traveling in the same direction, and as the driver of the car tried to pass the truck, the collision occurred in which appellant suffered serious injuries to his arm. The jury found the driver of the truck guilty of negligence proximately causing the collision, and found contributory negligence on the part of appellant because of his riding in the car with his arm in the position it was in while asleep.

Appellees have moved to dismiss the appeal, their contention being that the appeal bond was filed too late to confer jurisdiction on this court.

The proceedings of the trial were regulated by the Special Practice Act. On the day the judgment was entered, appellant filed a motion for mistrial, alleging jury misconduct. On the day set for a hearing on that motion, appellant asked if it might be agreed that he change the motion so as to make it a motion for new trial, and appellees consented, it being understood that the motion for new trial should contain no ground other than that contained in the motion for mistrial, and no additional affidavits. The instrument was endorsed "Plaintiff's Original Motion for New Trial," and it was agreed that it might bear the same file date as the other motion. Before the hearing on the motion for new trial, appellant indicated that he might desire to file an amended motion for new trial. Appellees protested that appellant was not entitled to present a motion for new trial and then amend and present the amended motion, and opposed any hearing at that time. Then the following colloquy took place:

"Mr. Peery (counsel for appellant): I want my motion, my original motion for new trial heard at this time Judge that's all that's been filed. Whether I can do something later on or not, I don't know, the Court has no control over what I can do later on, maybe I won't file any amended motion for new trial, I don't think I will

have to, but that's a matter that the rules say you have got to—

"The Court: It has to be filed with leave of the Court, an amended motion.

"Mr. Peery: Yes. I will probably ask leave of the Court if the Court overrules this, why certainly there is some other errors in here that I didn't feel it was necessary to raise in this original motion, errors of law and objections and exceptions raised in the evidence, things like that, but my position is that I think I can prove conclusively that this misconduct will set the verdict aside so why draw a motion with 37 assignments in it?

\*    \*    \*    \*    \*    \*

"The Court: All right, well, I don't know about hearing this piecemeal, then if the Court goes against you, filing something else, I would like to hear it all at once, hear the whole thing.

"Mr. Barker (counsel for appellees): That's the way it ought to be I never heard of hearing two motions for new trial, an original and an amended motion, the rules make no provision for it.

"Mr. Peery: I would like to put on these witnesses Judge, we have been delayed here today and these witnesses want to get back, I want my original motion for new trial heard.

"The Court: Well you have put the Court on notice that you will probably file an amended motion and I don't want to do anything to leave the impression that the Court will automatically grant the leave.

"Mr. Peery: Well that's all right Judge, that's all right, I know what the Court is thinking about but I don't want to foreclose my right that in the event the Court should overrule this motion to set up an assignment to the effect that the Court erred in admitting evidence of res gestae which was taken in the hospital and things like that but to prepare that kind of a motion I would have to have the record transcribed, and I can't see any reason, if I have got what I think is a cinch grounds for a new trial I would like to present it at this time.

"The Court: Well I would like to get rid of all of those fact questions.

"Mr. Peery: Well that's all there will be on this, just fact questions, I don't intend of course on an amended motion for new trial to come in here and put this testimony on again.

"The Court: I don't want any supplemental or amended motion set up showing misconduct of the jury.

"Mr. Peery: Well I will assure the Court that we are going to rely on any misconduct here, any motion we file, we will not call in some more jurors and go into some more misconduct—have another hearing on that.

"Mr. Sherrod (counsel for appellees): You will not do that?

"Mr. Peery: No.

"Mr. Barker (counsel for appellees): Well we still take the position that we will oppose any amended motion."

■ A hearing was had, during the course of which appellant introduced evidence of jury misconduct, and argument was offered. There is nothing in the record to show that the court overruled the motion, but appellees insist that at the conclusion of the hearing the court said that the motion was overruled. We think we are bound by the record. George v. Senter, Tex.Civ. App., 194 S.W.2d 290; Schweizer v. Adcock, 145 Tex. 64, 194 S.W.2d 549; Home Ins. Co. of New York v. Dacus, Tex.Civ. App., 239 S.W.2d 182.

The hearing was on the twentieth day after the original motion was filed, and on the same day the court entered an order granting appellant leave to file an amended motion for new trial, and an amended motion was that day filed. It was presented on the thirtieth day after its filing to another Judge sitting for the Judge who tried the case and heard the original motion. The docket has this notation, signed by the Judge to whom the amended motion was presented: "8–24–53 Plaintiffs' Amended Motion for New Trial presented to the Court. De-

fendants excepted to such presentment." There is nothing in the record to show that the amended motion was ever acted on by the court, and, if it had any efficacy at all, it became overruled by operation of law forty-five days after it was filed. The appeal bond was filed forty-seven days after the original motion was filed.

If the date on which the judgment became final is controlled by the date on which the original motion was filed, it became final two days before the appeal bond was filed. If the date on which the judgment became final is controlled by the date on which the amended motion was filed, the appeal bond was filed in time.

Although the case presents an unusual situation, we have concluded that appellant's right to file and present an amended motion for new trial was not foreclosed by the proceedings which had theretofore transpired. Rule 330(k), Texas Rules of Civil Procedure, provides that a motion for new trial may be amended "by leave of the court at any time before it is acted on within twenty (20) days after it is filed." Rule 330(j) is in part as follows: "All motions and amended motions for new trials must be presented within thirty (30) days after the original motion or amended motion is filed and must be determined within not exceeding forty-five (45) days after the original or amended motion is filed, * * *."

▬ There seems therefore to be a distinction between *presenting* and *acting on* a motion for new trial. We agree with appellees that there is no provision in the rules for amending a motion for new trial after the original motion has been acted on by the court; but we have been cited to no authority, and have found none, holding that the presentation of an original motion, even though testimony and argument are offered thereon, prevents the filing of an amended motion by leave of the court within twenty days after the original motion is filed, and before it is overruled. The rules provide for presenting as well as acting on motions for new trial; they do not provide that an amendment must be filed before the original has been presented, but only before it has

been acted on. And we are not at liberty to read into the rule something we do not find in it. Moreover, it has been held that a record should be given a liberal construction in favor of the right of appeal, rather than that the right of appeal should be denied by a strained construction of the rules. W. C. Turnbow Petroleum Corporation v. Fulton, 145 Tex. 56, 194 S.W.2d 256; Patrick v. Pierce, 107 Tex. 620, 183 S.W. 441; Blalock v. Slocomb, Tex.Com.App., 245 S. W. 648.

The motion to dismiss the appeal is overruled.

MASSEY, C. J., dissents.

MASSEY, Chief Justice.

I respectfully dissent from the majority opinion upon the motion to dismiss the appeal, believing that this court does not have jurisdiction to act upon the merits.

Though fully cognizant of the provisions that the Texas Rules of Civil Procedure be given a liberal construction, as well as the principle of law that a record should be likewise construed in favor of the right of appeal, yet it is my opinion that, because of T.R.C.P. 5 and its provision that the courts may not enlarge the period for taking any action under the rules relating to new trials or motions for rehearing except as stated in the rules relating thereto or the period for taking appeals except as provided for by those rules, a strict construction should be given to the rules in the test of our jurisdiction through appellate steps taken thereunder.

I believe that the appellant filed his appeal bond two days late. I believe that the calculation as to time for the appeal bond should date from the day the original motion for new trial was filed, because that motion was unqualifiedly presented to the trial judge. I am of the opinion that the Legislature in its enactment of V.A.T.S., Article 2092, subd. 28, intended that there would be only one time of "presentment" of a motion for a new trial in so far as the calculation for the purposes

of appeal would be concerned. I believe that the Supreme Court in its adoption of the provisions of said Article and section as they appear in T.R.C.P. 330(j) intended the same thing.

T.R.C.P. 330(j) reads in part as follows: "All motions and amended motions for new trials must be presented within thirty (30) days after the original motion or amended motion is filed and must be determined within not exceeding forty-five (45) days after the original or amended motion is filed, * * *."

I believe the rule should be construed as though it actually read, "All motions and amended motions for new trials must be presented within thirty (30) days after the original motion is filed and *once a motion for new trial is presented* must be determined within not exceeding forty-five (45) days after the original or amended motion *so presented* is filed, * * *." (Emphasis indicates words added to the rule as it reads.)

It is true that T.R.C.P. 330(k) provides that a motion for new trial may be amended by leave of the court at any time before it is acted upon so long as the amendment is filed within twenty days after the original motion was filed, and from this it appears clear that it is entirely proper for a movant to amend the motion for new trial which has already been presented and while it is under consideration by a trial court, upon the granting of leave to amend.

It has been held that where a movant files an amended motion for new trial he thereby abandons his original motion. Hill v. Reynolds Trust, Tex.Civ.App., Fort Worth, 1940, 137 S.W.2d 195; Walter v. Rowland, Tex.Civ.App., San Antonio, 1916, 189 S.W. 981, error refused. Unless the movant obtains leave to withdraw his amended motion and insists on the original, it has been held that the original motion is not abandoned where in filing the amendment there is no intention to abandon but only to add additional grounds. Maryland Casualty Co. v. Duhon, Tex.Civ.

App., Beaumont, 1931, 40 S.W.2d 198, error refused; 66 C.J.S., New Trial, § 145, p. 393.

In the present instance there is additional complication in that the trial court had the original motion under consideration after its presentation when he granted leave to the appellant to file his amended motion. He filed the amendment but did not present it to the court until the thirtieth day after he filed it. When he filed the amended motion did he by the act of filing the same render the original motion a nullity? Did this destroy the legal effect of the presentation already made of the prior motion? Did this destroy the efficacy of any evidence heard in support of the prior motion? Did this destroy all authority of the court to overrule or sustain the prior motion he had under consideration? I believe that he did not. I believe that he has by his act of filing the amended motion made a legal substitution of the amended motion for the original motion in the hands of the trial judge and that the evidence heard under the prior motion would still be proper of consideration by the trial judge if the ground upon which such evidence was heard was repeated in the amendment.

I believe that the first motion does not become a worthless legal document in the hands of the trial judge with nothing tendered him in substitution thereof, leaving him helpless to act upon any motion at all until such time as the movant chooses to present his amended motion to him. I believe that even though the amendment was filed with the clerk and not thereafter handed to the judge, its filing operated in law to place the amended motion in his hands in exchange for the original motion without any time interval and without any necessity of formal presentation. Suppose the appellant had never presented the amended motion to the trial judge. Could it be said that time for appeal did not run from the date the original motion which was presented was filed? I believe not. Likewise I believe the time was running under the original presentation until the time of the second presentation and

that the second presentation did not interrupt this time.

Judge Greenwood, in the case of Independent Life Ins. Co. of America v. Work, 1934, 124 Tex. 281, 77 S.W.2d 1036, indicated that the evident purpose of the rules of law in question is to make judgments final thirty (30) days after they are rendered, which purpose may be defeated only if the complaining party avails himself of the procedure upon which appeals may be founded, delaying the finality of judgments only by a strict compliance with the rules of law governing such procedure. He further indicated that the purpose of these rules of law was to give the trial judge a reasonable opportunity to consider the merits of a complainant's case and at the same time to expedite the progress of litigation and prevent unwarrantable and undue delay, and to hasten the day of judgment finality though with ample opportunity afforded a losing party to present his legal reasons why the judgment against him should not stand, and to preserve his right to present the same reasons on appeal if appeal is necessary. I believe that my opinion is in accord with the reasoning of Judge Greenwood in this case when I conclude that once a motion for new trial is presented the time for judgment finality or for steps to be taken to perfect an appeal is controlled by the date of the filing of that motion so presented, whether or not some later amendment might be permitted.

Judge Greenwood was considering the question of whether a second amended motion for new trial could be filed following the filing of a first amended motion. He reached the conclusion that the second amended motion could not be filed because the allowance of such would occasion a time computation dating from the day of its filing rather than from the day the first amended motion for new trial was filed, hence defeating the law's intent that time computation should date from the day an amended motion was filed, if filed at all. In my view the same kind of an extension of time would be involved if more than one presentment should be allowed if such presentment was of a subsequently filed motion, and that the allowance of an additional presentment would permit, a time computation dating from the day the subsequently presented motion was filed.

The operation of the applicable rules of law is twofold. Both the date of filing of motions for new trials and the act of presentment of such motions are controlling of the date of finality of judgments. If there is no presentment, operation of law overrules a motion for new trial thirty (30) days after the day it is filed, but if there is a timely presentment of such a motion, operation of law would not overrule it for forty-five (45) days after the day it is filed. So if there is both a filing and presentment, the presentment controls in that it extends the time for judgment finality for fifteen (15) days additional. The consideration disregards the fact that the trial judge is authorized to act affirmatively upon such a motion at any time after presentment, but even when considered, he is given the additional fifteen (15) days within which he may act affirmatively upon the motion.

So if Judge Greenwood, in the Independent Life Ins. Co. of America v. Work case, was correct in saying that the filing of a second amended motion for new trial would be void and of no legal effect, and if I am correct in my understanding of the premise of his statement to be the resulting extension of time for judgment finality which time extension the law intended to prohibit, then I am correct in my conclusion that the second presentment of the appellant's motion for new trial (his amended motion) is void and of no legal effect in so far as any operation in time extension for judgment finality is concerned. This, despite my opinion that under authority of T. R. C. P. 330(k) a motion for new trial which has been presented and which is under consideration by a trial judge may, by his leave, be amended in his hands.

Furthermore, I believe that Judge Smedley meant exactly the same thing by his statement in the case of Dallas Storage &

Warehouse Co. v. Taylor, 1934, 124 Tex. 315, 77 S.W.2d 1031, 1034, to-wit: "If a motion for new trial duly filed, whether original or amended, is presented within 30 days from the date of its filing, but is not determined within 45 days from the date of its filing, it is overruled by operation of law at the expiration of such 45-day period."

Believing that appellant's motion for new trial should be considered to have been overruled by operation of law forty-five (45) days from the day his original motion for new trial was filed because that motion was presented to the trial judge for his consideration and action, I would dismiss the appeal because the appeal bond was filed two days late.

## On Hearing on Merits

MASSEY, Chief Justice.

Assuming this court does have jurisdiction of the case on appeal, contrary to the opinion of this writer, then the writer is further of the opinion that the appellant has not preserved any error as to jury misconduct, a point on which he predicates his appeal. This follows in my opinion because the evidence was never offered or introduced pursuant to the amended motion for new trial. It was offered under authority of the original motion for new trial which was presented to the trial judge, but it follows from the opinion of my brothers that the original motion was abandoned either when the amended motion was filed with the clerk or when it was presented to the trial judge. If it was abandoned, the abandonment carried with it every act done pursuant to it unless some authority is shown in the record for consideration of some act or procedure under the original motion as having a place in the record of proceedings under the amended motion.

However, all the members of this court concur in the opinion that should we consider the appellant's point as to jury misconduct as raised on this appeal, it does not present reversible error. Appellant's

point is that one juror was induced, against his belief as to the fact, to answer that appellant was guilty of contributory negligence, by the statement of another juror that it would not make any difference how that issue was answered because the appellant would get the money awarded in any event. The testimony introduced on the hearing is rather voluminous. The court made detailed findings of fact, finding that the evidence as to misconduct was indefinite and contradictory and that if the improper statement was made at all, it was made after all the jurors had agreed that all parties involved in the accident were partially to blame. The court further concluded that it was not established that the answers of the juror would have been different had the alleged statement not been made.

From our perusal of the record on the hearing as to the misconduct, we agree with the trial court that there is evidence to support his findings. The burden is on the appellant to show not only that the misconduct took place, but also to show that it probably resulted in his injury. And where the evidence is conflicting on whether the misconduct occurred, as is apparent from the record, the decision of the trial court should be accepted as final. Texas Employers' Ins. Ass'n v. Tate, Tex. Civ.App., Fort Worth, 1948, 214 S.W.2d 877, error refused, n. r. e.; Barrington v. Duncan, 1943, 140 Tex. 510, 169 S.W.2d 462.

Another point on the appeal is the contention that the evidence introduced upon the trial of the merits was insufficient to support the finding of contributory negligence. The suit was for damages for injury to appellant's arm. He testified that at the time of the impact he was sitting next to the right door and was asleep, and when he fell asleep his elbow was on the sill of an open window. There were circumstances indicating that his arm extended outside the window. The injury was caused by the side of the truck striking his arm, the truck's contact with the car itself being very slight. The jury found

that appellant's act in riding with his arm in the position it was in while asleep was negligence proximately contributing to cause his injury. The existence of negligence is a fact issue unless but one conclusion can be drawn from the evidence; and this was a question that it was the province of the jury to resolve. Lone Star Gas Co. v. Fouche, Tex.Civ.App., Fort Worth, 1945, 190 S.W.2d 501, error refused, w. m.; Swiff v. Michaelis, Tex.Civ.App., Galveston, 1937, 110 S.W.2d 933, error dismissed; Coleman v. West, Tex.Civ.App., Beaumont, 1938, 116 S.W.2d 870; McCullough Box & Crate Co. v. Liles, Tex. Civ.App., San Antonio, 1942, 162 S.W.2d 1055, error refused, w. m.; Lackey v. Moffett, Tex.Civ.App., Fort Worth, 1943, 172 S.W.2d 715; Oil City Iron Works v. Stephens, Tex.Civ.App., Waco, 1944, 182 S.W. 2d 370.

Another contention is that it was error to admit the testimony of a highway patrolman that about an hour after the accident, at a hospital five miles from the scene, where appellant had been taken for treatment, George Ray, appellant's father and the driver of the car, in answer to questions about the collision, told him that he had been driving for some time and was tired, and that he misjudged the distance and hit the truck, and that he "just didn't see it and that was all." After an ambulance had arrived from Wichita Falls and had left with appellant for a hospital, Hasley called the highway patrol, and the witness reached the scene about 5:15 P. M., made an investigation, examined and drove the truck, and returned to Wichita Falls, where he talked to George Ray. The time of the accident was testified to by several witnesses as being between 4:00 and 4:30 P. M.

Appellees counter that the testimony was admissible as res gestae and as an impeachment of the witness, since he had denied that he had misjudged the speed of the truck and had run upon it too fast.

We do not think the res gestae rule is applicable to this state of facts. It was not shown that the statement was the transaction speaking through the witness, but it was the witness describing the transaction. 17 Tex.Jur., p. 622, sec. 261. "Res gestae" evidence is not the witness speaking, but the transaction voicing itself, and the voicing thereof must have occurred under such circumstances as to raise a reasonable presumption that the utterances constituting the voice are spontaneous utterances of fact arising out of the transaction itself. City of Houston v. Quinones, 1944, 142 Tex. 282, 177 S.W.2d 259.; 17 Tex.Jur., p. 620, sec. 261. Statements made some time after an occurrence by a witness in answer to specific interrogations as to facts, as in the instance here considered, have been held not to constitute "res gestae" evidence. Rosenthal Dry Goods Co. v. Hillebrandt, Tex.Civ.App., Beaumont, 1926, 280 S.W. 882.

Nor do we think it was admissible to impeach the witness. The two statements are not contradictory. But aside from that, it is the rule in Texas, and in a great majority of the other jurisdictions, that in order to impeach a witness by showing that he had made a statement contradictory to his testimony, a foundation must first be laid by asking the witness whether he made the statement, giving him an opportunity to admit or deny the statement, to correct his testimony, and to explain the apparent contradiction. 70 C.J., p. 1090, sec. 1280, and cases cited in the note. Had George Ray been a party plaintiff, a different question would have been presented, but he appeared only in the character of a witness, and of course the appellant should not be bound by his statement made out of the appellant's presence, five or six miles from the scene and an hour after the occurrence.

However, under the provisions of T. R. C. P. 434 the error would not be one which could have occasioned the return of the verdict which was returned or the judgment which was rendered, and therefore would not be reversible error. The appellees were found guilty of negligence

and the appellant's father was absolved. The appellant was found guilty of the contributory negligence already discussed. Such contributory negligence was wholly independent of the alleged negligence on the part of appellant's father, to which the contested statements of the father related.

Other points made by the appellant involve the action of the court in sustaining objections to questions propounded to appellee Hasley concerning allegations in his amended answer of negligence on the part of appellant and on the part of George Ray, his father, and concerning the failure of said appellee to allege any negligence as to either of such parties in the original answer. The points also involve the appellant's claim that the court refused to permit him to complete a bill of exception involving these matters. The collision occurred on July 9, 1951; suit was filed on January 12, 1952; the original answer was filed on February 2, 1952, and the amended answer was filed on June 10, 1953. The original answer contained only special exceptions and a general denial. The amended answer alleged several acts of negligence on the part of George Ray, which were claimed to have caused or proximately contributed to cause the collision, and one ground of contributory negligence on the part of the appellant, to-wit: riding with his arm in the position it was in while asleep.

Appellee Hasley testified on cross-examination that immediately after the accident, when he had an opportunity to investigate the facts, he came to the conclusion that the collision was caused solely by the fault of George Ray and the way he drove his car. It is to be remembered that the jury by its verdict arrived at a different conclusion and absolved Mr. George Ray of negligence solely causing the collision. After the said appellee so testified he was asked by the appellant if in his original answer he alleged that George Ray was in any way responsible for the accident. Objection was sustained to this question. The actual proceedings as taken from the appellant's Bill of Exceptions and the Statement of Facts were as follows:

"By Mr. Peery:

"Q. All right, let me lay the predicate. Mr. Hasley, when is the first time that you concluded that this accident was caused solely by the fault of George Ray? A. Maybe I misunderstand you, repeat that please?

"Q. Did you, immediately after this accident, that is, after you had had a chance to investigate the facts did you come to the conclusion that this accident was caused solely by the fault of Mr. George Ray and the way he drove that Studebaker automobile? A. You mean that was my conclusion?

"Q. Yes, sir. A. I couldn't see it any other way.

"Q. All right and you thought from the very first that Mr. George Ray was negligent and responsible for this collision in whole or in part? A. I couldn't blame myself in no way.

"Q. And Mr. Howard Barker the gentleman over here had authority to file an answer for you in this case did he not? A. Yes, sir. I suppose so he is a lawyer.

"Q. All right. Where is the original answer? Now I will ask you if on your behalf he filed an answer in this case on February 21, 1952, signed by Mr. Howard Barker, and I will ask you if anywhere therein if you or your attorney stated that Mr. George Ray was in any way responsible for this accident?

"Mr. Barker: If the Court please there is a general denial in that answer and the Court knows and Mr. Kearby Peery knows the effect of a general denial. The jury doesn't know it and I doubt if Mr. Hasley knows it. We object to it for that reason.

"Mr. Peery: I just asked him—

"The Court: I sustain the objection. (Conference)

"Mr. Peery: We would like to make a bill on it right now your Honor.

"The Court: All right gentlemen will you retire to the jury room. (Jury retired)

"Mr. Wilson: I can show the Court some authorities.

"The Court: I would like to see them.

"By Mr. Peery:

"Q. Mr. Hasley, I believe you testified that Mr. Howard Barker had authority to represent you in filing an answer in this case on the date it was filed which shows to have been February 12, 1952? A. Well, I don't remember nothing about the dates actually.

"Q. Well if he filed an answer for you he had authority from you to do that didn't he? A. Yes, sir.

"Q. It was all right with you and he was representing you? A. Yes, sir.

"Q. Now you had discussed with him the facts of this case prior to the time he filed that answer had you not? A. Well I don't know when he filed the answer I discussed the case with him.

"Q. And the answer shows to have been filed on February 2, 1952, according to the record. A. Yes, sir, but I don't remember the dates.

"Q. And prior to that time you had discussed with Mr. Barker the facts of this case and how the accident happened had you not?

"Mr. Barker: If the Court please he knows better than that.

"Mr. Wilson: Just a minute, we are making a bill, Judge.

"Mr. Peery: Let him answer the question this is out of the presence of the jury.

"Mr. Barker: I have never seen anything like that in my life.

"The Court: I sustain the objection.

"Mr. Peery: You mean I can't ask him your Honor if he discussed this case with his lawyers prior to the time that he filed an answer?

"The Court: I sustain the objection, yes.

"Mr. Peery: All right, note our exception because we are laying it as a predicate for the impeachment of the witness in that he has testified this attorney had authority to file the answer for him and it would show either a lack of interest that he didn't discuss the matter with him and if he had discussed the matter with him it is certainly a predicate for impeachment that he said immediately after the accident and after he had investigated it, that he was of the opinion that Mr. George Ray was the cause of the accident, solely at fault not partially at fault, and yet he filed an answer in which he set up no sole cause on the part of Mr. Ray and no contributory negligence on the part of Mr. Ray.

"Mr. Wilson: And for the further reason that it is a restriction of a right of counsel to take a bill of exception and show the answers of the witness to the questions as propounded by counsel and is therefore preventing the Plaintiff from proving his bill of exceptions and securing the answers to the questions asked on the bill of exceptions and is therefore a restriction to the right of counsel to prove his bill of exception.

"Mr. Peery: That's all. Just a minute, we offer in evidence to complete the bill all of the original answer in this cause including the signature, and that is your signature isn't it Mr. Barker?

"Mr. Barker: Yes.

"Mr. Peery: All right and in the alternative we offer in evidence all of the answer except the general denial.

"Mr. Barker: And we offer that.

"Mr. Wilson: Let the record further show that we tender the questions and whatever answer the witness would give if the Court would permit the witness to answer the question.

"Mr. Barker: At this time Judge I would like to request that you instruct the jury to disregard the question that was just asked Mr. Hasley because it involves a matter of law for the Court.

·"The Court: Let's see, the question was 'Did you in your answer set up contributory negligence' or words to that effect wasn't it?

"Mr. Barker: I forget what the question was. .      .

"The Court: Was that your question Mr. Peery?

"Mr. Peery: I asked him if prior to the time this attorney filed this answer—Oh, I didn't ask him that no, I asked him in substance as to when he first came to the opinion and conclusion that this accident was caused solely—

"The Court: That was answered. (Record read)

"Mr. Peery: Well, for the purpose of the bill let me have the record show this in addition, your Honor, that we intend to show by the bill that Mr. Howard Barker at all times had authority as an attorney to represent Mr. Hasley, and that he did not until the date of the amended answer, to-wit, on the 10th day of June, 1953, set up any allegations of any nature whatever, that Mr. George Ray was solely responsible for this accident or that this boy was—or Mr. George Ray was partially responsible for this accident or that this boy was guilty of contributory negligence and I would like to ask him one more question with reference to the predicate while the jury is out.

"The Court: All right.

"By Mr. Peery:

"Q. Mr. Hasley, when was the first time that you came to the conclusion that Mr. David Ray here, the Plaintiff in this case was guilty of negligence in riding with his arm on the window of the automobile or sticking out the window of the automobile?

"Mr. Barker: That calls for a conclusion based upon investigation, he didn't even know that the man—

"Mr. Wilson: Judge are we permitted to ask the question for the purpose of the bill of exception?

"Mr. Barker: He didn't even know at the time that the man had his arm out the window.

"The Court: You can qualify it that way. I will let them go into it but I think it is a question of law.

"By Mr. Peery:

"Q. Maybe I can put it this way Mr. Hasley are you of the opinion at this time that Mr. David Ray was guilty of negligence proximately causing his injuries in riding with his arm on the window or slightly protruding outside of that window of that automobile?

"Mr. Barker: Same objection, it is a question of law, he has got proximate cause in there and everything else and it hasn't been defined for him.

"Mr. Peery: He plead it your Honor.

"By Mr. Peery:

"Q. Are you of the opinion at this time that Mr. David Ray was guilty of negligence which proximately caused his injuries or which resulted in his injuries Mr. Hasley?

"Mr. Barker: I make the same objection.

"Mr. Peery: Can you answer that question? A. I don't know exactly what you mean.

"By Mr. Peery:

"Q. Do you think Mr. David Ray exercised ordinary care?

"Mr. Barker: If the Court please he is not qualified to answer that.

"The Court: I sustain the objection.

"Mr. Peery: All right, note our exception for the reason that it is probably a matter for a bill of exception and we offer the testimony and we intend to show if the bills are allowed that, we—ask the witness when was the first time that he concluded that Mr. David Ray was guilty of contributory negligence in this case and if at this time he is guilty of contributory negligence in this case.

"Mr. Barker: I·object to him talking so loud, judge, the jury can hear him.

"The Court: I sustain the objection.

"Mr. Peery: Because the Defendant Hasley is bound by the allegations of his pleadings and we have the right to show that in truth and in fact he does not believe in such pleadings and that this is merely something that was formulated by his lawyers in the case which is contrary to his own personal beliefs in the matter.

"Mr. Barker: Let the record further show for the purpose of the bill that the case was investigated on behalf of Mr. Hasley and Mr. Gage by the insurance carrier.

"The Court: Anything else?

"Mr. Peery: I believe that's all Judge. To which ruling of the Court the Plaintiff in open court excepts with reference to all matters offered.

"Mr. Wilson: And the prospective answers to the questions which the Court would not permit the witness to answer."

▆▆▆ It is immaterial whether the appellee's pleadings, original or amended, ever claimed that appellant's father was responsible for the collision. He was absolved of negligence by the jury in so far as we view the situation here posed. The testimony sought to be elicited from the witness before the jury was retired, and because of the refusal to appellant of the right to elicit which he desired to take his bill of exceptions, was clearly upon the restriction of inquiry into the appellee Hasley's reasons for not sooner charging Mr. George Ray with responsibility. Appellant's points have no materiality upon this matter for Mr. George Ray was not found to have been responsible. The appellant was found to have been partly responsible through the contributory negligence found against him by the jury. If the line of inquiry the appellant desired to follow with the witness Hasley had any materiality, it would have materiality only upon an inquiry as to why the appellee had not sooner charged the appellant with contributory negligence in the pleadings.

▆▆▆ From a careful examination of the questions asked the witness pursuant to the bill of exceptions, we cannot see where the trial court ever prohibited the appellant from asking any proper question of appellee Hasley as to why he had not sooner charged the appellant with contributory negligence, even assuming such a question constituted proper inquiry. The appellant might be said to have covered the matter had the charge against appellant's father been material, but every question which could have a bearing upon why appellant had not been sooner charged with negligence the question actually asked called for an opinion or conclusion on the part of the witness, past or present, as to appellant's negligence, or as to the witness' state of mind at some particular time. Actually, in so far as the purpose for which the jury was excluded, being to take a bill of exceptions to the refusal of the court to allow inquiry into the matter of why the appellee had not sooner charged George Ray with negligence, inquiries of the witness as to why he had not sooner charged the appellant with negligence would not reasonably appear to bear upon matters proper to be developed in the bill. But even should such questions be considered to bear upon the bill, yet they were improperly put and did not pointedly inquire into what might be considered the material ·question of the appellee's reason for delay in pleading his affirmative defense against the appellant.

Indeed, it reasonably appears that at one point the trial judge pointed out to the appellant's attorneys that they might qualify their question about the witness' conclusions as to appellant's negligence by going into the matter of when the witness first knew that the appellant had his arm out the window of the automobile, but the attorneys either did not understand or did not wish to take advantage of the suggestion. Nowhere does it appear that the appellant was restricted in the examination of the witness before the jury upon the point he deems material, but it only appears that the objec-

tions were sustained to the propriety of the questions appellant's counsel chose to ask during the procedure pursuant to the bill. The trial court never ruled that the appellant could not interrogate the witness before the jury upon his reasons, if any, why he had not sooner alleged appellant's contributory negligence. The rulings the trial court did make were neither arbitrary nor unreasonable, and hence should not be disturbed. 44 Tex.Jur., p. 1146, sec. 148.

█ Furthermore, it is believed that this case was not one where the omissions of allegations in the abandoned pleadings which were later included could have any materiality. We believe that unless it be made to appear that the facts later pleaded were of such a nature or the circumstances were such that one situated as the appellees were in this case would in the natural order of things have mentioned the facts in pleadings filed at an earlier time, if within their knowledge, and that their failure to do so bears sufficiently upon the question of the veracity of such parties when testifying as to entitle the fact of delay in pleading to be admitted into evidence as contradictory or inconsistent with the defensive theories (material to our consideration on appeal) upon which the appellees went to trial, no reversible error results from their exclusion. 45 Tex.Jur., p. 36, sec. 199; Gulf, C. & S. F. R. Co. v. Matthews, 1906, 100 Tex. 63, 93 S.W. 1068. See also McCormick & Ray, Texas Law of Evidence, p. 434, sec. 346; 8 Tex.Jur. Ten Year Supp., p. 296, sec. 219; Texas City Transp. Co. v. Winters, Tex. Civ.App., Galveston, 1917, 193 S.W. 366, reversed on other grounds in Tex.Com. App., 222 S.W. 541.

The judgment is affirmed.

BOYD, J., dissents.

BOYD, Justice.

I respectfully dissent from the decision affirming the judgment. In sustaining objections to the interrogation of appellee Hasley relative to his abandoned pleading, his subsequent allegations of contributory negligence, when he acquired knowledge of facts indicating contributory negligence, and appellant's efforts to complete his bill of exception, I think the learned trial court fell into error which calls for a reversal.

Appellees' position is that since Hasley was not an expert it was proper to exclude his testimony about the trial tactics and theories adopted by his counsel, and that any answers he might have made could have no bearing on the question whether in fact there was contributory negligence in the case; and further that appellant has not shown that harm resulted from the exclusion of the evidence.

The inquiry involved more than a criticism of trial tactics. And while answers to some of the questions might have amounted to conclusions, it must be remembered that the witness was a defendant, and had pleaded negligence approximately in the language used in the questions. He had authorized his counsel to file the original answer, and was therefore responsible for its allegations or lack of allegations. The situation was the same as it would have been had Hasley personally written every word of both answers. Appellant was not at the moment trying only to disprove the existence of negligence on the part of either of the Rays. Had that been his only purpose, the objection that answers to his questions would embody conclusions of law would have presented a different matter.

I think the point involves a consideration of the admissibility of, and the right to interrogate Hasley about, the original answer, as well as other aspects of the right of cross-examination.

A party is not required to allege all or any of his special defenses in his original answer; but there is no rule that prevents him from doing so. Hasley had the right to wait more than sixteen months after filing his original answer before amending and setting up for the first time the alleged negligence of the Rays; but that in no way affects appellant's right to subject Hasley's reasons for the delay in making such defense, and any claim of knowledge of the facts themselves, to every scrutiny known

to the law. The issue of contributory negligence was a vital factor in the trial, the unfavorable finding on the issue having deprived appellant of a verdict.

The right to cross-examine an adverse witness is valuable, is absolute, and should not be abridged; and especially is this so when the witness is a party and has testified to make out his own case. It is only after the right has been fully and fairly exercised that the court in its discretion may curtail the cross-examination. The object of cross-examination is to destroy or weaken the witness' testimony by testing his veracity, recollection, prejudices, motives, and good faith. Any evidence which can fairly be said to thus weaken his testimony, however slight its probative force may be, is competent, any objection thereto necessarily being addressed to its weight, which is for the jury, and not to its admissibility.

Abandoned pleadings are competent evidence to show admissions against interest. Houston, E. & W. T. R. Co. v. De Walt, 96 Tex. 121, 70 S.W. 531, 97 Am.St.Rep. 877; Austin v. Jackson Trust & Savings Bank, 59 Tex.Civ.App. 155, 125 S.W. 936, writ refused; Warburton v. Wilkinson, Tex.Civ. App., 182 S.W. 711; First Nat. Bank of Hereford v. Hogan, Tex.Civ.App., 185 S.W. 880, writ refused; National Cattle Loan Co. v. Armstrong, Tex.Civ.App., 8 S.W.2d 767, writ refused. But it is not essential to their admissibility that abandoned pleadings either show admissions against interest or that they contradict subsequent pleadings. Omissions in pleadings may be shown as well as contradictions. And when abandoned pleadings possess the characteristic of independent relevancy, they may be received to prove some fact in the case, to show that the pleader made a different claim or defense at another time, to raise unfavorable inferences as to good faith in a belated claim or defense, or to impeach the pleader as a witness. 31 C.J.S., Evidence, § 304, p. 1082.

It has been held that where in a defendant's third answer a defense of fraud was set up, his two abandoned answers, containing no allegation of fraud, were admissible to show that the defense of fraud may have been an afterthought. Walser v. Wear, 141 Mo. 443, 42 S.W. 928. In Mathews v. Livingston, 86 Conn. 263, 85 A. 529, which was an action for damages for ejecting the plaintiff from rooms and assaulting her, the original complaint, an amendment thereto, and a substituted complaint, were held to be admissible to show that in none of them did the plaintiff allege that she had been assaulted. Where an attorney in his original bill in a suit for professional services claimed the amount of $75, and his amended bill asked for $200, the court said that the original bill was admissible to affect the plaintiff's credibility as a witness, and for other purposes. Leavitt v. Deichmann, 30 Okl. 423, 120 P. 983.

The abandoned pleading being admissible, I think it follows that appellant had the right to interrogate Hasley about it, about the amended answer, and about when he acquired any knowledge of facts indicating contributory negligence.

The materiality of the proffered evidence was apparent. The issue as to appellant's contributory negligence was controverted. The evidence was almost entirely circumstantial, and could support an inference favorable to either side. The existence of some of the circumstances was disputed. No witness testified that appellant's arm extended through the window; indeed, no witness testified that his arm was even in the window at the time of the collision. Appellant admitted that when he fell asleep his elbow was on the window sill, and that his forearm was down at an angle, inside the car. He denied that his arm protruded outside the window. But that it did might be inferred from the severity of its injury and the fact that the contact of the vehicles was slight. Appellee Hasley testified that he made a close examination of the car and saw no damage to it other than to the vent glass, and that the truck needed no repairs as a result of the collision, its only damage being a cracked reflector. George Ray testified that in addition to the shattered vent glass on his car, there was a crack in the main door glass and an indentation on the

front door post. He further testified that as he was about to pass the truck, it slowed down and without any signal moved to its left until it extended about a foot across the center line, and the impact took place when his car was alongside the truck. The possibility is not ruled out that the swerving of the car to the left to pass, and avoid contact with, the truck could have been the cause of appellant's arm being outside the window, if it was, at the time of the collision. That could conceivably happen to a person whether asleep or awake.

Nor can I agree that error is not apparent since appellant failed to show that harm resulted from the exclusion of the testimony sought to be elicited. It is true that Hasley's answers are not in the bill of exception. That is one ground of appellant's complaint. But it is not necessary for him to show that the answers would have been favorable. When objections are sustained to questions propounded to an adverse party, we must assume that the answers would not have been unfavorable to the party seeking them. Were it possible to do so, appellant might be required to incorporate the answers in the record; but we must not overlook the fact that appellant was not in appellee Hasley's confidence.

On Motion to Retax Costs

MASSEY, Chief Justice.

Along with appellant's motion for rehearing he presented for the first time a motion to retax costs.

■ Appellant's motion relates to the transcript only and not to the statement of facts. A part of the transcript consists of a supplemental transcript containing the amended petition upon which the appellant went to trial. Since under provisions of T. R. C. P. 376 the clerk of the trial court is charged with the duty of including this as a part of the original pleadings upon which trial was had, and since the clerk did not include the pleading in the original transcript, any question as to whether the costs of this supplemental transcript should or should not be charged to the appellant is removed because there was no agreement between the parties that such pleading need not be included as a part of the record.

■ As to the balance of the transcript, it appears that appellant filed his appeal bond on September 22, 1953, and ordered the instruments he desired incorporated in the transcript on October 1, 1953. On October 5, 1953, the appellees filed their request with the clerk ordering in addition, among other instruments, their special exceptions to the appellant's pleadings, their exceptions to the court's charge, their motion for instructed verdict, their requested special issues which were refused, and the record made of appellant's argument to the jury.

The appellant's brief was not filed in this court until November 27, 1953. In the brief the appellant sought a reversal of the judgment and a remand of the cause for another trial. He did not seek rendition of a judgment in his favor from this court. Therefore the usefulness of the items stated above to have been ordered by the appellees as part of the transcript became valueless to the appellees in so far as they might have intended to use them in connection with cross-assignments of error, in the event appellant should seek to have the judgment reversed and rendered in this court. The transcript, which included these instruments, was filed in this court on October 28, 1953. This was a month prior to date appellant's brief was filed with us, and since the contrary is not shown, presumptively the date appellees were first on notice as to just what the appellant would rely on in this court both as to points of error and prayer for relief based thereon.

So, by the time appellees were in position to know that they had ordered matter immaterial to the appeal the clerk had already done his work on it and included it in the transcript. The clerk was entitled to tax costs therefor in his cost bill. The record does not show that there was any attempt by the appellant to lay a predicate whereby he might get costs retaxed against

the appellees in the event he lost in the appellate court by invoking the provisions of T. R. C. P. 377-a and filing with the clerk of the court a statement of the points upon which he intended to rely upon the appeal, or by doing anything at all to induce the appellees to accept an abbreviated transcript. Therefore the appellant is not in position to complain of the inclusion in the transcript of the matter complained of and neither may he be heard to complain that the costs thereof were taxed against him as the losing party on the appeal.

The motion to retax costs is denied.