**ALLIED TILE COMPANY, Respondent,**

v.

**MILLER–STAUCH CONSTRUCTION CO., INC., Appellant.**

**No. WD 39179.**

Missouri Court of Appeals, Western District.

Dec. 8, 1987.

Respondent's Rehearing Denied Feb. 2, 1988.

Appellant's Motion for Clarification of Opinion Denied Feb. 2, 1988.

Donald V. Pierce, Jr. & Michael P. Swisher of Pierce & Associates, Kansas City, for appellant.

David M. Rhodus & Susan M. Elliott of Morris & Larson, P.C., Kansas City, for respondent.

Before CLARK, P.J., and TURNAGE and MANFORD, JJ.

MANFORD, Judge.

This is a civil action seeking damages for breach of an oral contract. The judgment is reversed and the cause remanded.

Appellant has presented several alleged errors, but due to the disposition herein, only a single issue is considered. Appellant charges the trial court erred in admitting into evidence a written form of subcontract with the cancellation clause of said contract excised therefrom when said contract was admitted as proof of a preexisting oral contract.

The record reveals the following pertinent facts:

Appellant, Miller–Stauch Construction Company, Inc. (hereinafter Miller–Stauch) was original defendant at trial. Respondent, Allied Tile Company (hereinafter Allied) was original plaintiff at trial. Miller–Stauch was the general contractor for the construction of a building project, commonly known as Bankers Square, located in Overland Park, Kansas. Allied was a proposed tile subcontractor on the same project. Allied claims that the parties entered into an oral agreement on March 26, 1984 for the supply and installation of tile by Allied on the various building structures. The claim of a contract, of course, is denied by Miller–Stauch.

The area to be tile-covered included some 53,000 square feet of exterior tile, requiring the utilization of scaffolding to a height of six building stories. Miller–Stauch secured the bid as the general contractor and in turn gave notice to various subcontractors for bids regarding different phases of the work. Allied is a tile installation company and submitted its bid by telephone to Miller–Stauch on March 6, 1984.

David Bray of Allied testified, in summary, to the following:

Pursuant to submitting its bid, Allied secured the plans and specifications for the tile work. The plans and specifications detailed the technique of application, location of tile, and materials to be used. As noted above, Allied submitted its bid by telephone (not an uncommon practice) to Miller–Stauch on March 6, 1984, and agreed to do the work and supply the tile for $529,100.00. The bid had two formats referenced alternate one and alternate two. For alternate two, the $529,100.00 sum was modified by $7,950.00. The bid provided that caulking was excluded and that an underlay coating called "brown coat" was included. By telephone, Bray was contacted by Bill Dean, President of Miller–Stauch, shortly after the bid by Allied was submitted. Bill Dean sought assurance from Allied that Allied could supply the necessary material and labor force, and have the tile work completed by late December, 1984. Allied assured Dean that it could meet these requests.

On March 19 or 20, 1984, Gene Dean called David Bray to inquire if certain modifications to the plans and specifications would affect Allied's bid. Bray assured Dean that the modifications would not change the bid and on March 21, 1984, Allied sent adjusted calculations to Miller–Stauch. On March 26, 1984, Bill Dean of Miller–Stauch called Allied to determine whether Allied could secure the tile from a foreign manufacturer in time to meet the

construction deadline. Bray advised Bill Dean that a firm order would have to be placed with the manufacturer. During this conversation, according to Bray, he (Bray) asked if Allied was going to get the job and Bill Dean advised that Allied had the job and that Miller–Stauch would issue a written contract. Later the same day, Allied placed a tentative order for 53,200 square feet of tile. On this same date, Allied undertook other actions relative to the tile orders and samples. Correspondingly, on March 26, 1984, Miller–Stauch sent a letter to Allied requesting a break-out or breakdown of tile costs per building for each of the five buildings in the project.

In response to this letter, Allied forwarded break-out cost listing to Miller–Stauch on April 2, 1984. On April 11, 1984, Miller–Stauch forwarded to Allied a letter stating that the architects had approved the tile samples forwarded previously by Allied. On April 16, 1984, Allied, represented by Bray, participated in a meeting to discuss work scheduling. At this meeting, Bray was asked if Allied could obtain a performance bond. In addition, discussion was held regarding the scheduling of the tile work, savings which might be made by using alternative installation procedures, the plastering work, the scope and extent of caulking to be provided by Allied, and storage of the tile on the job location. At this same meeting, Bray asked if Miller–Stauch would be willing to place a $10,-000.00 deposit on the tile as per the request of the tile supplier. Allied denied that the foregoing matters discussed were demands (except the deposit) by Miller–Stauch.

On April 19, 1984, Gene Dean of Miller–Stauch called Bray and requested a performance bond of Allied. In turn, Bray requested a copy of the subcontract agreement to send to his bonding company. On April 20, 1984, Allied received the subcontract agreement, which was unsigned. The agreement reflected the terms provided in Allied's original bid. Allied secured the required bond. On the same date (April 20, 1984), Miller–Stauch sent a letter to all subcontractors, stating there would be mandatory weekly job meetings. Allied received a copy of the letter. On April 30,

1984, after unsuccessful attempts to contact Gene Dean, Bray reached him and Dean advised Bray that Allied was not going to be used on the project. Allied subsequently received a letter, advising that it would not be used as the tile subcontractor. The letter stated that although Allied and Miller–Stauch had been negotiating, no formal agreement had been reached. On behalf of Allied, Bray cancelled the tile orders. Allied had some 60 hours of time involved, but no other actual out-of-pocket expenses.

This action commenced, seeking recovery of anticipated profits from the contract. Allied produced an expert, who testified that its profits from the $529,100.00 contract would have been $163,221.00. Before trial, Allied secured an order from the trial court permitting Allied to introduce the written subcontract agreement to prove Allied's claim of an oral contract as of March 26, 1984, *but* with a portion of the agreement removed. The written agreement bore a date of April 10, 1984. The removed portion was a cancellation provision which reads as follows:

XXVIII. *Cancellation:* The Contractor, by written notice executed by an Officer, shall have the right to terminate and cancel this Contract, without the Subcontractor being at fault, for any cause or for its own convenience, and require the Subcontractor to immediately stop work. In such event, the Contractor shall pay the Subcontractor for that work actually performed in an amount proportionate to this Contract price. The Contractor shall not be liable to the Subcontractor for any other costs, including prospective profits on work not performed. However, if the reason for the termination and cancellation of this Contract is due to any default or action by the Principal, A/E or as a result of Court Order or public authority, then the Contractor shall not be liable to the Subcontractor for any sum greater than that which the Contractor receives from the Principal on behalf of the Subcontractor's performance less any costs incurred by the Contractor.

Miller–Stauch opposed introduction of the above-agreement without the cancellation provision. At each occasion, Miller–Stauch's position was denied. The agreement was introduced without the above term being included, over the objection of Miller–Stauch. During trial, Bray, for Allied, referred to the written agreement and acknowledged no difference between the alleged oral agreement and the written agreement. Bray also stated that he had requested the written agreement from Miller–Stauch to secure a bond. Allied did secure a bond by use of the written agreement. Bray stated he expected that the conversation between Allied and Miller–Stauch, which he alleged amounted to an oral contract, would be memoralized by a written agreement. During the cross-examination of Bray, certain items, both from the written agreement and the numerous conversations between Allied and Miller–Stauch, were discussed. Bray asserted that such items were either never discussed or they were not significant to the formation of a contract.

Miller–Stauch's position was that no oral contract was formulated as of March 26, 1984. Miller–Stauch introduced evidence of various factors, which it contended remain unresolved as of March 26, 1984, and of additional demands made by Allied which were refused by Miller–Stauch. It was the further position of Miller–Stauch that it did not conduct business with subcontractors without a written agreement and that the agreement of April 10, 1984, was the offered written agreement. Miller–Stauch repeatedly objected to the introduction of the written agreement with the exclusions of the cancellation clause. Miller–Stauch also offered as an exhibit the cancellation clause. The trial court ruled against Miller–Stauch on this question repeatedly.

The evidence closed. The jury awarded Allied the sum of $90,000.00 as unearned, but anticipated, profits upon the alleged oral contract of March 26, 1984. This appeal followed the overruling of timely-filed post-trial motions.

The issue before this court can be summarized by the following question: Was Allied entitled to introduce the written subcontract agreement as proof of a previously existing oral contract without including the cancellation clause?

■ The general rule is that trial court rulings relative to the acceptance or rejection of evidence will not be disturbed on appeal unless it is shown that the trial court abused its discretion in such rulings. *O'Laughlin v. Barstow,* 654 S.W.2d 95, 97 (Mo.App.1983).

■ The record herein reveals that the trial court gave no reason for excluding the cancellation clause. What occurred was that the original trial judge sustained a motion in limine for Allied, permitting the introduction of the written subcontract agreement and correspondingly prohibiting Miller–Stauch from referring to the cancellation clause. No reason for such ruling was given. Before trial, this case was reassigned to another judge and when the issue again was argued, the second trial judge merely stated that he did not wish to disturb anything which had been previously done by the prior judge.

In addition to the trial court's failure to provide any rationale for the exclusion of the cancellation clause, the record reveals the following evidentiary matters related to the issue. Pre-trial discovery included the following interrogatory by Miller–Stauch and the responses provided by Allied:

INTERROGATORY NO. 7: If it is plaintiff's contention that an oral agreement for the tile work was entered into between plaintiff and defendant, please state:

(a) Whether plaintiff contends it requested and received from defendant a written memorial of this agreement containing all of the terms and provisions of the partys' (sic) verbal agreement; and

(b) Whether a copy of this alleged written memorial is attached to plaintiff's Petition as Exhibit "A".

ANSWER:

(a) Plaintiff contends it requested and received from defendant a copy of a writ-

ten contract form filled out with the essential terms and provisions of the partys' (sic) verbal agreement to be presented to plaintiff's insurance carrier for the purposes of obtaining a Payment and Performance Bond as requested by defendant. Plaintiff contends that the document received from defendant is evidence of the fact of the existence of the partys' (sic) agreement and understanding, and the essential terms thereof;

(b) Yes.

In addition, the written subcontract agreement was attached to Allied's petition as an exhibit and included the cancellation clause. Further, the testimony of David Bray on behalf of Allied established that the written agreement contained the provisions of the alleged oral agreement. Bray testified, on behalf of Allied, that he requested the written agreement to secure a bond. The evidence revealed that the written agreement was utilized to secure the bond. The evidence further revealed that Bray had entered notations upon the written agreement as to items contained thereon about which he either had questions or with which he disagreed. Bray explained these notations as having nothing to do with the contract terms or Allied's willingness or ability to perform. Bray's testimony acknowledged the written subcontract agreement was a memorialization of the alleged oral contract.

It is Allied's contention that as of March 26, 1984, Allied and Miller–Stauch entered into an oral agreement whereby Allied was to be the tile subcontractor on the project. Allied further asserts that it was entitled to introduce the written subcontract agreement without the cancellation clause to prove the oral contract. Allied's position is that since the alleged oral agreement of March 26, 1984 did not include cancellation, Miller–Stauch should be prohibited from introducing evidence of cancellation. Conversely, Miller–Stauch denied the existence of any oral agreement. Further, Miller–Stauch asserts that if, in fact, an oral agreement did exist, the written subcontract agreement was a memorialization of such an oral agreement and that Allied

acknowledged the memorialization, made use of such agreement, and in being permitted to introduce said written agreement, Allied was bound to introduce the written agreement in its entirety, inclusive of the cancellation clause.

There is no dispute that the above cancellation clause or one of like format is enforceable and binding upon the parties to an agreement. As can be observed, the cancellation clause, by its wording, is directed to the limitation of damages recoverable by a subcontractor and such recovery does not include future, unearned, or anticipated profits.

Allied asserts that it was not obligated to introduce the entirety of the written subcontract agreement and Allied's assertion is correct. *See Sapp v. Key,* 287 S.W.2d 775, 781 (Mo.1956). Allied further correctly asserts that it was the responsibility of Miller–Stauch to introduce the excluded portion of the written subcontract agreement. The record reveals Miller–Stauch's attempt to introduce the cancellation clause. Allied resisted such introduction and continues to assert that the introduction of the cancellation clause was irrelevant to Allied's claim of an oral contract since the cancellation was not discussed or disclosed to Allied on or before March 26, 1984.

Miller–Stauch asserts that it should have been entitled to introduce the cancellation clause under the general rule announced in *C.T. Carter v. Matthey Laundry & Dry Cleaning Co.,* 350 S.W.2d 786, 792 (Mo. 1961). Miller–Stauch further asserts that since Allied alleged an oral contract and since the evidence disclosed Allied's reference to the written agreement, the jury should have been permitted to determine whether the cancellation was part of the oral agreement between the parties.

This court concludes that the trial court did abuse its discretion and thus erred by its refusal to allow Miller–Stauch to introduce the cancellation clause portion of the written subcontract agreement. The record is replete with the use, reference, and reliance upon the written agreement

by Allied. If Allied was to be allowed the use of said written subcontract agreement, then, while it was not bound to introduce the entirety of said document, Miller–Stauch was entitled to introduce any portion thereof not previously offered by Allied. This included the cancellation clause.

The judgment is reversed and this cause is remanded for further proceedings, if any, in conformity with the opinion of this court.

All concur.